EAST TENNESSEE, VIRGINIA AND GEORGIA RAILROAD
COMPANY *v.* TENNIE GURLEY.

1. PLEADINGS AND PRACTICE. *General verdict. Railroads.* In an action
against a railroad company by the widow of an engineer in charge
of a train, who was killed by reason of a collision occasioned by a
misplaced switch, the declaration contained two counts, one count
based upon the ground that the switch was dangerous for want of a
target, and the other upon the incompetency of the switch-tender
negligently retained by the company, the jury found the issues joined
on both counts in favor of the plaintiff, and it was held that even if
there was no testimony to sustain the first count, the verdict on the
second count would be good.

2. SAME. *Evidence.* It is competent in such an action to prove that the
deceased was a man temperate and regular in his habits.

3. SAME. *General objection to evidence.* A general objection to evidence is
not sufficient where the evidence is admissible for any purpose.

4. SAME. *New trial. Improper remark of counsel.* An improper remark of
counsel in discussing the question of punitive damages, although ob-
jected to at the time and not rebuked by the court, where all consid-
eration of punitive damages was excluded by the judge's charge to
the jury, is not a sufficient ground for a new trial.

5. SAME. *Charge of court. Negligence.* The use of the words "grosser
negligence" in a charge does not imply the doctrine of comparative
negligence where they are immediately followed by the explanatory
clause, that negligence which was the prime, principal, and proxi-
mate cause of the injury.

6. SAME. *Fellow-servants. Charge of court.* An error in the charge as to
who are fellow servants is not fatal, where the entire charge is based
on the assumption that the deceased engineer and the yard-master,
whose negligence was the cause of damage, were fellow servants.

7. SAME. *Charge of court. Erroneous.* An erroneous charge of the law
on one count in the declaration as to which there is no proof, will
not vitiate the verdict on the second count which is sustained by the
proof, and as to which the charge is correct.

8. SAME. *Charge of court. Special request.* It is not error to refuse a
special request not strictly accurate, the substance of which has been
already charged.

Railroad *v.* Gurley.

9. SAME. *Special request submitted to opposite counsel.* It is not error for the court to submit to the examination of opposing counsel specia requests of a party, before he acts upon them.

10. SAME. *Railroads. Negligence. Personal injury.* It is no excuse to the company whose negligence in retaining an incompetent servant occasioned a collision, that the party injured in the excitement of the moment lost his presence of mind and adopted the wrong mode of self-preservation.

FROM KNOX.

Appeal in error from the Circuit Court of Knox county. S. A. RODGERS, J.

W. M. BAXTER for Company.

INGERSOLL & COCKE for Gurley.

COOPER, J., delivered the opinion of the court.

Suit brought by Tennie Gurley, as the widow of Dan. Gurley, for damages for injuries to him, resulting in his death, received while he was acting as engineer of a passenger train of the East Tennessee, Virginia and Georgia Railrold Company. The jury found a verdict in favor of the plaintiff below, upon which judgment was rendered, the trial judge refusing to grant a new trial. Upon the hearing of the appeal in error prosecuted by the company, the Referees have reported in favor of affirming the judgment.

The accident occurred at Cleveland, an important station on the road, about half-past one o'clock in the day time, and was occasioned by a misplaced switch. The train was a regular daily passenger train coming east, in charge of Gurley as engineer, and, as the

weight of evidence shows, on schedule time. It was entitled to the main track, and the engineer had the right to suppose that the switch would be properly set. The rules of the company required its yard-master to see that switches were properly adjusted, and for this purpose to inspect them ten° minutes before the arrival of each train. On this occasion, the yard-master had not inspected the switch for two hours, and had only started from the depot to the switch, about 150 or 200 yards distant, for the purpose of performing his duty when the accident occurred. The switch was what is known as a "split switch," coming up on each side of the main track, which is permanent, and being adjusted by moving it to or from the rails of the main track through a space of about five inches. Instead of being set for the main track, as it should have been, this switch was misplaced so as to throw the train on the side-track, and bring it in collision with a car loaded with coal standing thereon. The weight of evidence is that Gurley shut off steam about three-quarters of a mile from the depot, and put on the air-brakes about 200 yards from the switch, so as to have passed the switch at the rate of about ten miles an hour, the speed to which he was limited by the rules of the company, and to stop the train at the depot. At about 40 or 50 yards from the switch the fireman of the engine, who was preparing his clothing with a view to dining at the depot when the train stopped, noticed that Gurley suddenly applied all the air-brakes to their full power, and threw his feet over the lever so as to reverse the engine. These

Railroad *v.* Gurley.

actions caused the fireman to look ahead, expecting to see, he says, a cow upon the track, when he noticed that the switch was wrong.  As they swept over it on to the side-track, Gurley passed behind him to the steps by which the engine is ascended and descended. There he seems to have stood until the collision was about to occur, when he jumped off, falling down the embankment, and breaking both of his legs, from which injuries he died in about nineteen days.  The fireman, who remained on the engine, was only slightly bruised, and no other person on the train was seriously hurt. The switch had no target attached, by which it might have been seen from any part of the yard, and for 200 yards on the track, whether the switch was properly adjusted.  And the weight of proof is that the misplacing of the switch in this instance, owing to the curve of the track by which it was approached, and the location of a water-tank, could not be seen by the engineer until he was within thirty or forty yards of it, less than one-third of the distance required, with all appliances, to bring the train to a full stop when running at the rate of ten miles an hour.  The coal car on the side-track was as near to the switch as it could be, and leave room to a train on the main track to pass.

There is evidence tending to show that the yard-master, whose negligence occasioned the accident, was not a suitable person for the position, and the fact of his incompetency known to the company.  He had suffered for years under an incurable disease which had a tendency to weaken all the faculties of sense,

and had experienced one attack of paralysis. One of his feet had been injured while in the service of the company so as to make him limp. And he himself . testified that his eye-sight had become impaired and he had "swimmings" in the head. The witnesses describe him as sluggish in movement and forgetful in memory. He had served the company as brakeman and baggage-master before he was appointed yard-master, and in each of these capacities he had been reported to the appointing or superior officer of the company for failure to perform his duty. Promotion as a conductor had been refused him on account of unfavorable representations as to his qualifications. The weight of evidence . is that he had the character of being slow and careless, and that the fact was known to his official superiors. And complaints had been made of him as yard-master both in the manner in which he got up and started trains, and in the performance of his duties as switch-tender. ` There is testimony to show that the deceased knew the yardmaster personally, and sometimes spoke to him from his engine in passing, but no testimony to show that he was aware of mental and physical defects, which rendered him incompetent as a yard-master.

The declaration contained two counts. One of these counts was based upon the ground that the switch in question was unsafe and dangerous for want of a target. The other count claimed that the yard-master was incompetent for the performance of the duties of his office, and that the defendant had, or by the use of such care, prudence and vigilance as it was bound

to employ, could have had notice of his incompetency, and negligently retained him in its service. Upon the trial, the jury found "the issues joined on both counts of the plaintiff's declaration in favor of the plaintiff."

The first ground relied upon for reversal is that there is no evidence to sustain the finding on the first count of the declaration, and the judgment being general on the entire findings, and bad in part is bad altogether. It is, of course, the duty of railroad companies to furnish a safe road, and for this purpose to keep all portions of their track in repair, and so watched and tended as to insure the safety of all persons who may be upon their trains, whether passengers or servants or others, and this is a continuing duty: 2 Thom. Neg., 985; *Nashville and Chattanooga Railroad Company* v. *Elliott,* 1 Cold., 612. But this duty must be taken, so far as the servants of the company are concerned, with the qualification that the servant does not know of the defect, or if he does know, that he has reported it, and remained on duty under the promise or reasonable belief of its speedy remedy: *East Tennessee, Virginia and Georgia Railroad Company* v. *Hodges,* 2 Leg. Rep., 6. In this case, there can be no doubt that the target, which is an old and well known appliance to railroad switches, would have made the switch safer, by extending the distance from which the position of the switch might be seen. But .it is equally clear that the deceased engineer, Gurley, who had daily for years passed over the road, must have known of the absence of the target, and the distance

at which he could see the switch from the trains, and he does not appear to have ever complained of the defect. Such knowledge of a defect and failure to complain are not, however, always conclusive upon the servant: 2 Thomp. Neg., 1015. But whether there is anything in this case to take it out of the rule may admit of doubt. It is not necessary to determine the point, for we are clearly of opinion that the judgment may be applied to the finding of the jury on the other count, if good, even if the finding on the first count be not sustained by the evidence. And this for the obvious reason that if the defendant be found guilty of negligence upon either count of the declaration, the injury to the deceased and the measure of damages is precisely the same. By statute: "If any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts:" Code, sec. 2969. It is conceded by counsel that in the case of several counts a general verdict would be applied to those counts sustained by the evidence. But the reason would be that the action being the same, the several counts merely repeating the plaint in different aspects with a view to possible variations in the proof, the ends of justice and the object of our statutory provisions are thereby accomplished. For the same reason it has been held that if an indictment contain two counts for the same offense, both counts being good, and there be no evidence to sustain one of the counts, a general verdict upon a correct charge will be applied to the count which is sustained by the evidence: *Taylor* v. *State,* 3 Heis., 460. And

Railroad *v.* Gurley.

this ruling has been extended to a case where the charge was not correct on the count as to which there was no evidence: *Parham* v. *State,* 10 Lea, 498. So, where the finding was specifically upon two of several counts, and only one count good: *Isham* v. *State,* 1 Sneed, 112. In all these cases the court can see that the merits have been reached without any real prejudice to the rights of the defendant. The rule would of course apply for a stronger reason to civil cases as to which this court is forbidden by statute to reverse for errors which do not affect the merits of the judgment: Code, sec. 4516.

It is next objected that the court erred in permitting, over the objection of the defendant, the following question and answer: " You may state what were his (the deceased) habits, whether he was a man of good, regular, temperate habits, or not? Ans. He was a man of good habits, temperate and regular in his habits." But the damages which were recoverable in this action were such as the injured party himself could have recovered, if instead of being killed he had been disabled for life; if not the same amount, at least the same elements of damage: *Railroad Co.* v. *Smith,* 9 Lea, 470, 474. It was competent to show the ability of the deceased to labor, and his capacity for labor as well as skill in his art, business or profession, in order to show what he was capable of earning: *Railroad* v. *White,* 5 Lea, 540. The argument is that the testimony was introduced for the purpose of aggravating the damages upon the idea of the great loss of such a man to his widow and children, and thus bring-

ing in the injury to them as an element of recovery contrary to the rulings of this court: *Trafford* v. *Adams Express Co.*, 8 Lea, 96; *Nashville & Chattanooga Railroad Co.* v. *Smith*, 9 Lea, 470. The evidence was however, clearly admissible for the purpose first mentioned, and the defendant's objection is general, without assigning any specific ground. In such a case, the trial judge can only be put in error by stating the specific objection. For his Honor would then have instructed the jury that !the evidence was admissible for the one purpose, but not for the other. A general objection to specific testimony, as contra-distinguished from an objection to the competency of a witness, is treated by some of the authorities as insufficient for any purpose: *Thompson* v. *Anderson*, 1 Leg. Rep., 44; *Fountain* v. *Pettee*, 38 N. Y, 184; *Ward* v. *Kilpatrick*, 85 N. Y., 413. So, if the objection is put upon a ground not sustainable: *Richmond* v. *Richmond*, 10 Yer., 343.

The bill of exceptions states that one of the counsel of the plaintiff, in discussing the doctrine of punitive damages, said to the jury: " You can and you should, out of the abundance of this company, take enough to keep this woman and her children from want all the days of their lives." Upon objection taken at the time, the court said: " Let it pass." Error is assigned on the action of the trial judge. The conduct of the trial must necessarily be left largely to the discretion of the presiding judge, a discretion which in its very nature cannot be made the subject of review by this court, except in a clear case of the

abuse of that discretion.  If new trials were granted
for remarks of counsel in the heat of debate merely
because they exaggerated the rights of the client, or
went beyond the strict letter of the law, very few
verdicts, we fear, would be permitted to stand.  These
departures may generally be left to the criticism of
opposing counsel in reply, the good sense of the jury
in making allowance for the zeal of the speaker, and
the weight which is required to be given to the charge
of the judge.   It is very obvious that his Honor,
the trial judge, did not consider the remark of the
counsel of any importance.  And as his charge ex-
cluded all consideration of punitive damages, the remark
itself would perhaps not have excited attention except
for the interruption of the counsel.   At any rate, there
is clearly nothing in what took place requiring either
a moral lecture to trial judges and zealous counsel, or
an 'interference with the verdict of the jury.

It is next objected to two paragraphs of the charge
that they in substance embody the doctrine of "com-
parative negligence," a doctrine correctly said not to
be the law of this State.   But the whole argument
is rested upon the use in each of the paragraphs of
the words "grosser negligence," and the inference of
counsel as to what must be implied from them.   But
the words are borrowed from the opinion of Judge
McKinney in *Whirley* v. *Whiteman,* 1 Head, 623, the
leading case on the subject in this State.   In discus-
sing the subject of contributory negligence, that emi-
nent judge says: "He shall be considered the author
of the mischief by whose first or *more gross* negligence

it has been effected." By these words he manifestly means immediate or proximate negligence, and so they have been treated in all of our subsequent cases, the last case being the *East Tennessee, Virginia and Georgia Railroad Company* v. *Fain,* 12 Lea, 35. The charge in this case upon the subject of negligence is substantially the same as the charge in that case, being delivered by the same judge. And in both of the paragraphs now objected to, the words "grosser negligence" are immediately followed by the explanatory clause: "that which was the prime, principal and proximate cause of the injury." The doctrine of comparative negligence is not charged.

The trial judge said in his charge: "Fellow-servants are those who stand in the same grade and same department of the common employment; those occupying a higher grade and position of authority over a servant, or in a separate and distinct department of the master's business from him, are not his fellow-servants." It is, however, not necessary to consider whether the charge is erroneous either in omission or commission, because it was a mere abstraction. The charge assumes that the engineer in control of the train, and the yard-master in his character of switch-tender, were fellow-servants for the common object of keeping the train on the main-track, and bringing it safe to its destination, and says to the jury that they could not find for the plaintiff on the second count unless they were satisfied that the yard-master was incompetent, and the company knew, or ought to have known the fact, and that the engineer did not know it.

Railroad *v.* Gurley.

The next objection is to the refusal of the court to charge, upon the first count, that if the jury found that the switch was otherwise safe, adequate and sufficient, then it would be sufficient without a target, because the company is not bound to provide such switches with targets. The request is clearly open to the objection that it concludes the jury from weighing the facts and circumstances, if any, which might show that the engineer had failed to notice the defect, or which, as we have seen, might allow a recovery notwithstanding knowledge on his part of the defect. But it is unnecessary to consider the point, for, as we have also seen, even if there were no evidence to sustain the finding on the first count, the judgment would be good although sustainable only on the second count.

The company requested the court to make the following charge, which was refused: "Where the law imposes a duty upon another, the law presumes that such duty was properly performed, hence, from the mere fact that the yard-master was incompetent, if such be the proof, and an injury resulted to other servants therefrom, the law will not presume want of care on the part of the defendant in the selection or retention, although such facts are material circumstances, in connection with other facts, to establish want of care. If, therefore, you should believe from the proof that the yard-master was incompetent, this fact merely would not tend, even *prima facie,* to establish negligence on the part of the railroad company in employing or retaining him. The burden in this case is on the plaintiff to establish the fact that the injury resulted. to

Gurley because the railroad company did not exercise reasonable and proper care in these respects, or either of them, and this must be established as a fact in the case, and cannot result as an inference from the circumstance that the yard-master was incompetent. And if it appears from the proof that Gurley had, or ought to have had, the same knowledge of the incompetency of the yard-master that the railroad company had, then there can be no recovery on the second count in the declaration."

The substance of this request is that the presumption of law, is in favor of the performance of duty; that mere incompetency of the servant is not sufficient. to raise the contrary presumption of want of care in the selection or retention, and the burden is upon the injured party to show that the master did not exercise the proper care. But the trial judge had already charged that the presumption that the master had done his duty must be overcome by proof, and that before the plaintiff could recover on the second count of the declaration, he must show: 1. That the yard master's negligence caused the accident by being the proximate and efficient cause thereof; 2d, that the yard-master was incompetent; 3d, that the company retained him in its service after it knew, or ought to have known, or had notice of his incompetency; 4th, and that Gurley did not know of the incompetency, and had not equal means of knowing with the company. The presumption in favor of the company, and the burden of proof upon the plaintiff is here put as clearly and strongly as in the request. The request is merely a

proposition of the law applicable to the relation of master and servant, where incompetency and injury exist. But counsel cannot be permitted to select the words of a charge, nor to put the charge in a form most favorable to their client. All that they can ask is that the law which regulates the rights of the client shall be fairly and fully stated in the form proper to come from an impartial judge. If, therefore, they ask for charges of points of law, which have already been fully and fairly given to the jury, there is clearly no error in refusing the request; and, *a fortiori*, if the wording of the proposition submitted be not strictly accurate: *Rea* v. *State*, 8 Lea, 356.

The proposition in question is inaccurate in that it ignores a degree of incompetency which, of itself, might in the opinion of the jury import notice. The language is also equivocal in the clause "tend even *prima facie* to establish negligence." The counsel construes these words as meaning that the fact of incompetency would not make even "a *prima facie* case of liability." But the more obvious sense is that it would not "tend to establish negligence," the words "*even prima facie*" being so collocated in the sentence as to leave the sense in which they are used doubtful. Incompetency in an employee is a strong circumstance which does tend to establish, as an essential link in the chain of facts, negligence, although by itself it would not establish negligence *prima facie* or otherwise. The trial judge can scarcely be held to have been in error in refusing to adopt so equivocal an expression, especially as it is a mere abstraction, after he had

already distinctly embodied the substance of the entire paragraph in his charge by throwing the whole burden of proof upon the plaintiff.

The trial judge refused also to charge the following request: "If the proof should show that at the time of the accident Gurley was running his train in violation of a positive regulation or order of defendant, and that such disobedience was the promoting cause of the injury, then there can be no recovery in this case." But this request as an abstract proposition was incorrect, if we give to the word "promoting" its usual and proper meaning, for it would prevent all recovery in the case of contributory negligence, which would be contrary to all of our decisions. The counsel insists, and in no other way can his proposition be sustained. that the word, although "it may not be as technically correct as proximate," yet "it means the same thing as proximate." But in that view, it would only repeat what the court had already told the jury as to the result upon the right of recovery of the negligence of the plaintiff's husband being the proximate cause of the accident. And we are unable to concur with the counsel in thinking the two words have the same meaning.

The trial judge refused to charge two other propositions of the company, each in substance based upon the idea that the engineer and the yard-master were fellow-servants, and that the former could not recover for injuries occasioned by the negligence of the latter, because, being fellow-servants, such negligence was one of the "ordinary risks" assumed by the engineer in

Railroad *v.* Gurley.

entering into the defendant's service. But there might be a recovery in such a case if the negligence of a fellow-servant were supplemented with the negligence of the master in employing or retaining an incompetent servant. The requests were incomplete as propositions bearing on the facts of the case, and were useless repetitions as abstract propositions where the charge assumed the existence of the relation of fellow-servants, and expressly stated that there could be no recovery unless it was shown by the plaintiff that the fellow-servant was incompetent, that the company was guilty of negligence in retaining him, and that the deceased was ignorant of his incompetency.

Some comment is made upon the fact that the trial judge, when the counsel of the company, at the close of the delivery of the regular charge and on the eve of the noon-day adjournment of the court, presented his requests for additional charges, proposed to hand the propositions to the opposing counsel, and did, over the objection of the company, hand them to such counsel. As the judge did, however, immediately, in deference to the objection made, resume possession of the propositions, and subsequently act upon them himself, no harm was done, and no real ground of complaint could possibly exist. In truth, however, the action of the judge was in accord with what was actually done in *Williams* v. *Miller*, 2 Lea, 405, 412, which was treated *sub silentio* by the counsel and by this court as unexceptionable. And the court had the undoubted right to submit the propositions to the opposing counsel for examination and discussion if he saw proper.

Railroad *v.* Gurley.

It is earnestly pressed upon the court that the evi_
dence is insufficient to sustain the verdict of the jury
on the second count of the declaration. But the prop-
osition is somewhat difficult to maintain after the
verdict of the jury, the refusal of the circuit judge
to grant a new trial, and the careful analysis and
grouping of the testimony upon the material points
made by the Referees. The gist of the counsel's
argument is that the proximate cause of the accident
was the rate of speed at which the deceased, contrary
to the rules of the company, was approaching the
switch. But we think the great preponderance of the
testimony of the witnesses tends to show that the steam
was turned off nearly three-fourths of a mile from the
switch, and the air-brakes applied about two hundred
yards from the switch, and that the speed was so re-
duced that the train would not have passed the point
at a greater rate of speed than that permitted by the
rules of the company. The weight of testimony,
moreover, is that the engineer saw the misplacement
of the switch as soon as it could be discovered with-
out a target, and closed the brakes at once, and per-
haps wholly, certainly partially reversed the engine, in
other words, did all that could be done under the
circumstances to lessen the calamity. But the most con-
clusive circumstance in favor of this view of the case is
the fact that so little damage was done by the collision.
No passenger was hurt at all, and only two employees
slightly bruised. The first is conclusive that the shock
of the collision was not very great. And if, in the
excitement of the moment, the deceased lost his own

Railroad *v.* Duffield.

presence of mind, and adopted a mode of self preservation which proved to be most unfortunate for him, it is no excuse to the company whose negligence in employing or retaining an incompetent servant caused the disaster.

Affirm the judgment.