# WESCO PAVING CO. v. NASH.—245 S. W. (2d) 782.

Eastern Section. July 18, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

410

Frazier, Roberts & Weill, of Chattanooga, for plaintiff in error.

Berke & Fleming, of Chattanooga, for defendant in error.

HOWARD, J. This is a tort action for damages for personal injuries. The parties will be referred to as they appeared in the trial court.

On the night of July 30, 1949, the plaintiff, Irene Nash, was injured while walking along a pathway paralleling Brainerd Road, in the City of Chattanooga, by stepping into a pile of fresh dirt allegedly left in the pathway by defendant's employees, and falling and breaking her left leg. Brainerd Road is a four-lane street running east and west, and is a heavily traveled thoroughfare. It is a part of the Lee Highway running from Knoxville, Cleveland and other points east to the city of Chattanooga.

On the north side of Brainerd Road, between the Southland Skating Rink and the Brainerd Theatre, a distance of about a block, there are no houses or buildings and

no paved sidewalk. Between these two points there is an established and recognized walkway which pedestrians have been using as a sidewalk for several years. This walkway consists of dirt and rock and is from 12 to 18 inches above the street level.

· Plaintiff's home was to the south of Brainerd Road and about three blocks from the skating rink, and on the night in question she and her niece had previously gone to the skating rink by walking down the south side of the street and jaywalking across the street in front of the skating rink where they stayed until about 9 p. m., when they decided to return to their homes. Upon leaving the rink, and not wanting to jaywalk across the street because of the heavy traffic, they walked westwardly along the pathway heretofore described toward the Brainerd theatre and the Germantown road intersection where there was a traffic light, and where they could safely cross the street. They had reached a point near the middle of the block when the plaintiff, who was walking ahead, stepped into the pile of fresh dirt and fell, fracturing the fibula or small bone of her left leg about 4 inches above the ankle. Plaintiff was immediately helped by her niece and two unknown persons to the runningboard of a car nearby, after which the niece went to the Brainerd theatre for assistance. Not finding anyone to assist her she immediately returned to the plaintiff where she found her lying on the ground suffering severe pain. A few minutes thereafter, Garrison Siskin, one of plaintiff's witnesses who was passing and saw plaintiff lying on the ground, offered his assistance, which was accepted, and plaintiff was taken in his station wagon to her home. A doctor was not called that night but was called the next morning, at which time plaintiff was

examined and later sent to Erlanger Hospital where x-rays were made and her injuries ascertained.

On the date of the accident the defendant, Wesco Paving Company, was under a contract with the State of Tennessee to widen and repave Brainerd Road, and in the widening process it was necessary for the defendant to remove several feet of dirt between the then existing concrete pavement in the street and the pathway in question. This necessitated the use of patrol graders and other machinery by the defendant, and it was the plaintiff's theory that defendant's employees while excavating in the street left the fresh dirt in the walkway into which plaintiff stepped and fell, sustaining her injuries.

The plaintiff's declaration is in 4 counts. The first count alleges in substance that the defendant negligently failed to barricade the pile of dirt while paving the street, and failed to fix lights thereon; that it negligently failed to have warning signs and also failed to rope off the area to prevent pedestrians using the walkway.

The second count, based on the provisions of an Ordinance of the City of Chattanooga, was not submitted to the jury, the court directing a verdict thereon.

The third count alleges that the defendant violated Ordinance No. 1394, Sec. 14, Bk. A-1, p. 69 of the City of Chattanooga requiring red lights to be kept burning on obstructions or excavations on streets and thoroughfares.

And the fourth count charges that the defendant violated Ordinance No. 2329 of the Building Code which provides that all barriers, materials, rubbish, etc., in the street shall have placed upon or by them lamps with red globes, etc.

To the declaration the defendant plead the general issue and filed numerous special pleas. It denied that its employees piled any dirt in the walkway where plaintiff fell, and alleged that the City Ordinances plead by the plaintiff were "a part of a general ordinance known as the Building Code" which had no application to the work or road contractors, and denied violating any of the provisions of the ordinances set out in the declaration.

At the conclusion of all the proof the defendant's motion for peremptory instructions was denied and the jury returned a verdict for the plaintiff for $8500.00. On defendant's motion for a new trial the court ordered a remittitur of $1500.00 which was accepted by the plaintiff, and defendant's motion was duly overruled. Thereupon the defendant appealed to this court, assigning errors which will be hereinafter considered.

■ ■ Under the first two assignments it is insisted that there was no evidence to support the jury's verdict, and that the court erred in refusing to sustain the defendant's motion for peremptory instructions; that plaintiff adduced no evidence that the defendant at any time ever placed the dirt in or along the pathway. While these assignments involve a review of the evidence, "such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 149,

240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564, 570.'' D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901.

■ We shall now review briefly the plaintiff's proof relating to the specific question raised by the assignments.

L. H. Templeton, Superintendent of the Department of Streets & Sewers of the City of Chattanooga, testified that he was present every day while the defendant was widening and repaving Brainerd Road, because the city had a crew there adjusting the manholes in the street; that no other construction work was being done in that area by anyone else at that time. He said that he was familiar with the pathway between the skating rink and the theatre, and upon being asked if he remembered whether or not the defendant pushed any dirt along the side of the street, he replied: ''They did. They had to excavate for the shoulders and had to dig the dirt out. * * * Generally it was kicked to the side.'' He further stated that he was not interested in the suit and that the city was not involved in any way.

Jack Hatfield, Assistant City Building Inspector, testified that he was familiar with the conditions existing on Brainerd Road prior to and while the repaving work was in progress, and that a row of dirt was piled along the north side of the street near the pathway between the skating rink and the theatre by defendant's employees. He said that he was in that section several times daily, and that he was familiar with the type of machinery used by defendant for grading the street and removing the dirt, and he stated that ''there was a windrow to the right of Brainerd Road, which would be on the north side * * *.'' He further said that he had examined the records kept by the building inspector and that there

were no permits issued for excavation or the breaking up of the sidewalk in that section by any concern other than the defendant.

Jack Britton, owner of the skating rink, said that he was reasonably familiar with the area between the skating rink and the theatre, and that the walkway or sidewalk prior to the accident was good and that it was used frequently by the public. He stated that he remembered when the street was being widened and repaved by the defendant and that some dirt was pushed to the right as well as to the left by defendant's employees; that he particularly remembered that some dirt was piled over near the walkway where plaintiff fell.

Garrison Siskin testified that when he first saw the plaintiff she was lying on the ground and appeared to be suffering much pain, and that he volunteered to take her home; that he and plaintiff's niece put her into his station wagon. He said that he telephoned Mr. Russ, a friend of his and the president of the defendant company, on the following morning informing him of plaintiff's injuries. He said that it was dark where the plaintiff fell; that there were no warning lights or signs at or near the point of the accident; that the street was being paved by the defendant at the time of the accident, and he described the dirt piled in the path as ''big solid hunks of dirt that someone had piled there''; that he did quite a lot of construction work himself, had seen bulldozers removing dirt and that the piles of dirt in the pathway looked like they had been piled there by a bulldozer.

John T. Cotter, Plumbing Inspector for the City of Chattanooga, stated that no permits had been issued by his Department for anyone to take up the sidewalk for

plumbing purposes immediately prior to or at the time plaintiff sustained her injuries.

Mrs. Louise Vogt, plaintiff's niece, testified that she had previously used the pathway at which time it was smooth, and that on the day following the accident she returned to the place and found several shovelfuls of dirt and gravel in the walkway. This witness also stated that there were no lights or warning signs along the pathway, and that it was dark and difficult for anyone to see the fresh dirt.

The plaintiff testified that she was 60 years old, had been working for the Dixie Mercerizing Company for 25 years earning $185.00 per month, and that she had safely used the pathway on one or two other occasions; that on the night of the accident there were no warning lights along the pathway, and that she was walking carefully when she stepped into the loose dirt and fell, and that when she got home her shoes were muddy and dirty. She said that on the following day she went to the hospital where several x-rays were made, and that her leg was placed in a cast which she wore for 6 weeks; that she stayed at home 3 or 4 days after which she went to work wearing a cast. She stated that the company for which she worked sent a car to her home for her in the mornings and returned her in the same manner in the afternoons.

The defendant introduced as witnesses C. L. Adams, State resident engineer supervising the work done by defendant; Clarence W. Pratt, a mail carrier for the Postal Department; Alvie T. McAfee, defendant's street superintendent; Orell Daugherty, its grader operator; Claude Murphy, a truck driver; and F. M. Deaver, defendant's general superintendent. All of these witnesses testified that none of defendant's employees ever piled

any dirt in or along the pathway or on either side of the street; that when the shoulders were being graded the dirt therefrom was pulled to the middle of the street where it was picked up by a machine with a conveyor belt and loaded on trucks and hauled away. Adams said that he spent from 40 to 50 per cent of his time inspecting the work being done and seeing that the plans and specifications were being carried out. He said, as defendant's other witnesses also stated, that the defendant did not add any dirt to or take any from the bank over which the path extended.

Though forcibly argued that the plaintiff's case is based upon speculation and conjecture, we are constrained to disagree with this contention. The defendant introduced no evidence as to the condition of the walkway at the time of the accident, nor did it call as a witness its president, Mr. Russ, who was notified of the accident by Mr. Siskin the day after it occurred. Mr. Russ apparently knew of the condition of the street on the night of the accident, and it was not unreasonable for the jury to conclude that his testimony would have been unfavorable to the defendant had he testified. It is apparent that Mr. Russ did not inform any of the defendant's employees regarding the information received from Mr. Siskin until several months after the accident had occurred.

In the light of the disputed issues of fact, we think that the case was properly submitted to the jury and that there was sufficient evidence to support the verdict. The plaintiff not only proved by direct testimony that the defendant's employees piled dirt along the pathway in question, but also proved that no other person was authorized to do any excavation or construction work in that area at that particular time, which is a strong

circumstance that the dirt was placed in or near the pathway by the defendant.

■ An issue may be proved by either direct or circumstantial evidence, or a combination thereof. In the comparatively recent case of Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965, 971, the Middle Section of this Court said: "Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities, or inconsistent theories, are equally supported by the evidence, the case must go to the jury. Law v. Louisville, etc., Railroad Co., 179 Tenn. 687, 699, 170 S. W. (2d) 360; New York Life Insurance Company v. Nashville Trust Co., 178 Tenn. 437, 159 S. W. (2d) 81; Bryan v. Aetna Life Insurance Co., 174 Tenn. 602, 130 S. W. (2d) 85; Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Pickard v. Berryman, 24 Tenn. App. 263, 142 S. W. (2d) 764; Gifford v. Provident Life Insurance Co., 16 Tenn. App. 21, 64 S. W. (2d) 64; Jones Commentaries on Evidence, Second Edition, Revised and Enlarged, page 23, section 12."

■■ It is well settled that where work is being done on a street, due care must be taken to avoid injury to travelers, and a contractor creating a hazard therein is under duty to place suitable barricades or warning signs, and in nighttime, to properly place lights, to warn traveling public of the hazard, and failure to do so would be negligence for which contractor would be liable. Finchem v. Oman, 18 Tenn. App. 40, 72 S. W. (2d) 564;

Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222.

Under the third assignment, it is urged on behalf of the defendant that the court erred in submitting counts 3 and 4 of plaintiff's declaration to the jury; that the ordinances upon which the said counts are based ''do not apply to road contracts, but apply only to building contracts,'' and that ''it very well may be that the jury based its verdict upon these counts.'' No insistence is made that the first count of the declaration is not good, or that it fails to state a cause of action.

■ ■ According to the record the jury returned a general verdict, and it has long been the rule that a general verdict is not vitiated by the absence of proof on some counts of the declaration if there is evidence to sustain the averments of a single count. Code, Sec. 8824. East Tennessee, V. & G. R. Co. v. Gurley, 80 Tenn. 46; Tennessee Cent. Ry. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452; Sledge & Norfleet v. Bondurant, 5 Tenn. App. 319; Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219; Wilson v. Moudy, 22 Tenn. App. 356, 123 S. W. (2d) 828; Schumpert v. Moore, 24 Tenn. App. 695, 149 S. W. (2d) 471; Taylor v. Cobble, 28 Tenn. App. 167, 168, 187 S. W. (2d) 648. Moreover, a reversal is forbidden by Code, Sec. 10654, for any error in procedure unless it affirmatively appears that the error complained of affected the result of the trial. There is nothing before us to affirmatively show that the jury based its verdict upon the counts complained of, or to show that the jury was confused by the charge.

Finally it is insisted that the verdict of the jury is excessive; that it is so excessive as to show passion, prejudice and caprice on the part of the jury. According to the proof plaintiff not only suffered a fractured fibula,

but also sustained a bad sprain of her ankle. After the cast was removed, which she wore for 6 weeks, her leg continued to swell and remained stiff in spite of heat treatments and manipulations administered by her doctor. It appears that at the time of the trial her ankle was swollen and that she suffered considerable stiffness in and around her ankle joint; that because of this condition she not only walked with a limp but she had considerable difficulty in walking down steps without holding onto something.

Dr. Hiram Laws testified that plaintiff had a limited action of her ankle joint, had a permanent stiffness therein, and that she would possibly walk with a noticeable limp the rest of her life; that plaintiff suffered great pain and much inconvenience because of her injuries.

Plaintiff's medical expenses amounted to approximately $150.00, and it appears that during the time of her injury she was paid her regular salary by her employer.

 While no mathematical rules of computation have ever been formulated making verdicts and judgments uniform in negligence cases, it is the duty of the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases. Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848, 853; Foster & Creighton Co. v. Hale, supra; 15 Am. Jur., Sec. 205, pp. 621, 622.

In Town of Clinton v. Davis, supra, Judge Burnett, speaking for the eastern section of this court, stated the law which we think applicable here:

" 'The complaint in the case at bar is not that the verdict was corrupt either actually or inferentially, but

that it was so large as to indicate that it was influenced by passion, prejudice or caprice; in other words, not that it was a dishonest verdict, but that it was an excessive verdict.

" 'The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.' (Reeves v. Catignani) 157 Tenn. [173] page 176, 7 S. W. (2d) [38] page 39.

"The author of American Jurisprudence in Volume 15 thereof at page 622 has stated the rule as follows:

" 'Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an abuse of discretion is shown.' "

The able trial judge having heretofore ordered a remittitur of $1500.00 which was accepted by the plaintiff, we see no additional reason for a further reduction of the judgment. Accordingly, all assignments of error will be overruled and the judgment will be affirmed at defendant's costs.

McAmis and Hale, JJ., concur.