## NASHVILLE, CHATTANOOGA AND ST. LOUIS RAILWAY, Plaintiff in Error, v. WILLIAM SIDNEY CRAWFORD, Defendant in Error.—281 S. W. (2d) 69.

Western Division. June 29, 1954.

Petition for Certiorari denied by Supreme Court, December 17, 1954.

William F. Murrah, of Memphis, for plaintiff in error.

Walker Percy, of Memphis, and Troy Tomlin, of Somerville, for defendant in error.

BEJACH, J.  The sole question presented by the appeal in this case, is whether the trial court should have directed a verdict in favor of the Defendant, Nashville, Chattanooga and St. Louis Railway, either at the close of the Plaintiff's proof or at the close of all of the proof, the motion having been renewed at that time; or stated differently, whether there is any evidence in the record to support a verdict in favor of the Defendant in Error, the Plaintiff in the Court below. For convenience the parties will be styled as in the lower Court, Plaintiff and Defendant.

This suit was brought by the Plaintiff, a resident of Laconia, Fayette County, Tennessee, in the Circuit Court

of Shelby County, against the Defendant, Nashville, Chattanooga and St. Louis Railway, and the Virginia-Carolina Chemical Corp., which has a place of business in Memphis. It was alleged that the Plaintiff suffered personal injuries as a result of a side door of a freight car falling on him, while the car containing fertilizer, consigned to Plaintiff's employer, was being unloaded April 5, 1952 on a side track at Laconia, Tennessee. Suit was filed April 3, 1953.

The declaration alleges that the door of the car was stuck and the rollers at the top of same were missing, where it should have been suspended from a track, but that the missing rollers or absence thereof, were concealed by an iron flange covering the track. It was charged that the Defendant, Virginia-Carolina Chemical Corp. closed the door of this car, a car belonging to the Wabash Railroad, and being car number 47,875, by inserting wooden wedges at the bottom of the door, pressing the door up and concealing the defect, and by permitting said car to be shipped in said defective condition, without warning as to its condition. It was further alleged that the Defendant, N., C. and St. L. Ry. failed to properly inspect the car, and delivered same in a defective condition at the siding at Laconia, Tennessee.

Both Defendants filed pleas of the general issue and also special pleas. Defendant, Virginia-Carolina Chemical Corp. denied having inserted the wedges under the door. At the end of the Plaintiff's proof, both Defendants made motions for peremptory instruction. That of the Defendant, Virginia-Carolina Chemical Corp. was granted and no appeal had been perfected as against it. Consequently, the case now rests solely against the Nashville, Chattanooga and St. Louis Railway Co. At the

end of all of the proof, the N., C. and St. L. Ry. renewed its motion for a peremptory instruction, which was again denied, and the matter submitted to the jury. The jury returned a verdict in favor of the Plaintiff for $1,500. The Defendant, N., C. and St. L. Ry., made a motion for a new trial which assigned as error that there was no evidence to support the verdict, and that the motion for a peremptory instruction should have been granted. The motion for a new trial was overruled, and appeal was perfected to this Court.

There is little conflict as to the material facts presented by this record. The freight car, being Wabash car number 47,875, was not furnished to the consignor, Virginia-Carolina Chemical Corp. by the N., C. and St. L. Ry. The N. C. and St. L. did not have trackage into the plant of the Chemical Corp., but received the car from the L. and N. Railroad which was one of three railroads servicing the plant of the Chemical Corp. About April 1, 1952, this car was loaded with about 800 one hundred pound sacks of fertilizer, consigned to Morrison and Co. at Laconia, Tenn. Morrison and Co. was the employer of the Plaintiff. The car was inspected by the employees of the Chemical Corp. when it was loaded and no defects in the car were noticed or reported. The Chemical Corp. placed its seals on the car on the doors on both sides, and it was moved from its plant by the L. and N. Ry. The car was delivered by the L. and N. R. R. to the N. C. and St. L. during the afternoon of April 3, 1952 at its interchange track. Upon its receipt by the N. C. and St. L., it was given the usual and customary inspection by an experienced car inspector. The next morning, it was placed in a local freight train and given another inspection in the usual and customary manner. It was transported in and

by this local freight train the same morning and set out on the siding of the consignee at Laconia, between 40 and 50 miles east of Memphis. The consignee was notified the same day by telephone by the N. C. and St. L. agent at Somerville, six miles away. There was no station agent at Laconia. The defendant heard nothing further about this car until the agent at Somerville received a telephone call from an employee of the consignee on April 8, four days later, that the car was empty and a door was off but put back in the car. Nothing was then said about anyone having been injured, nor that any trouble had been had getting the door open. Station agent at Somerville directed the local freight train headed for Memphis that day, to pick up the car and that is the last the Defendant, N. C. and St. L., has heard of this car. Several days later, the wife of the Plaintiff came to the office of the station agent in Somerville and stated that her husband had been injured. The Defendant then sent a doctor out to see the Plaintiff, but he declined to have the railroad doctor look him over. The manner in which he was injured was as follows:

When he removed the wedges from the bottom of the car door and found that the door could still not be moved, he used a crow bar and a cold chisel, but was still unsuccessful in opening the door. Thereupon, he sent for a tractor which he hitched to the lever of the car door by a chain and had the tractor undertake to apply sufficient power to move the door. A first effort to move the door with the chain failed because the chain slipped from the tractor. Thereupon, the plaintiff reattached the chain and undertook to hold the chain for it to get tight. He then told everybody to get out of the way, and stepped back, himself, to what he thought was a safe place. When

the tractor started again, the door moved a very short distance, and then fell outwardly upon Plaintiff.

The Plaintiff and two of his witnesses testified that they had used tractors to open freight car doors on previous occasions, but they did not claim that the Railroad knew of any such practice or method of opening freight car doors. On the other hand, conductor Williams who had been running on local freight trains over this route for more than forty years, and had had vast experience in opening car doors, stated that he, had never heard of using a tractor for opening a car door until this instance occurred. The station agent, Corbin, who had been stationed at Somerville for more than five years, and had been with the railroad for more than twelve years, stated that he had never heard of using a tractor for opening freight car doors. Agent Corbin further testified that if he had been notified, which could have been done by telephone in a few minutes, that the door of this car was stuck and hard to open, he could have had it opened by employees of the Defendant railroad company within two or three hours after receiving the notice.

■ ■ A careful examination of the record in this cause fails to disclose any evidence which, in the opinion of this Court, warranted the trial Judge in submitting any issues to the jury. The law applicable to the duty of the Defendant Railway Co. in a situation of this kind is stated in American Jurisprudence and in a decision of our own Supreme Court as follows:

"When a railroad company furnishes freight cars for loading and unloading, it is liable only for ordinary care and for such defects as might have been discovered by reasonable care in inspection. It does not have the absolute duty of furnishing a proper car." 44 Am. Juris., "Railroads" p. 655; Illinois

Central R. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213.

Since the railroad company was not an insurer and liable only for lack of ordinary care, the burden of proof was on the Plaintiff to show some act of omission or commission on the part of Defendant Railroad Company which constitutes negligence. The contention asserted in Appellee's brief, that the burden of proof was on the Defendant to show a proper inspection of the car, is not well taken. The law is otherwise, the burden of proof being on the Plaintiff to show an improper inspection or some other act of omission or commission which constituted negligence proximately causing the injuries sustained by Plaintiff.

Even if this Court should be mistaken, however, as to the absence of evidence warranting a submission to the jury of the issue of negligence on the part of Defendant Railroad Company, the result would still be the same, because the record affirmatively discloses that the Plaintiff, himself, was guilty of negligence, which if it did not solely and alone proximately cause the injuries sustained by him, at least, conclusively establishes contributory negligence on his part, which would bar his action, and the result would be the same.

In support of this last position, Appellant's brief refers to an unreported opinion of the Supreme Court of Tennessee, in the case of Carl French v. N. C. and St. L. R. R. Co., written for the Supreme Court by McKinney, J. and filed Feb. 12, 1928. The facts of the French case are so completely similar to those of the instant case that we quote this opinion in full.

"French, with the aid of his assistant, shoved or pushed a heavy 12 x 12 door from its track upon himself, causing serious injury, for which he sues.

"The trial court directed a verdict for the defendant upon the ground of contributory negligence. The Court of Appeals concurred.

"French had gone to the warehouse of defendant for freight consigned to his employer. It was his custom to open this door, a fact of which the defendant had knowledge. The Railway, however, occasionally opened the door for him. While he was in the freight office procuring his bills of lading his helper opened the door about two feet, but it became fast. When French returned he noticed that the front roller was off the track. He did not attempt to place the roller on the track.

"Plaintiff caught hold of a nearby two wheel warehouse hand truck and 'jammed' it against the bottom of the door * * * his idea being to jar it loose as it seemed to be stuck. He and his helper described this lick as being 'not very hard,' and 'a light lick'. But the truck was metal and weighed about 140 or 150 pounds. Plaintiff then set the truck to one side and he and his helper pushed against the door with their combined strength. (The size and weight of the helper is not shown, but plaintiff was a powerful man weighing 198 pounds.) The door moved an inch or two and then there was a 'popping' noise at the top as though something had broken, and the door fell over on the plaintiff.

"Evidently plaintiff's injury was due to his negligence in jamming and shoving the door when it was stuck and off the track. The railway had not authorized him to do those things, and he acted without its consent or knowledge. He should have called on the railway to place the door on the track or to open

it, or he should have used other doors which were available. But knowing that the door was stuck and the roller off the track, he should not be permitted to shove the door loose so that it falls upon him and then call upon the Railway to compensate him for the injuries suffered.

"Conceding, for argument, that proper guards were not provided for keeping the door from falling when the rollers jumped the track, the plaintiff cannot recover on account of his negligence in forcing the door down when he knew that the roller was off the track. Since he admits seeing the roller off the track, he must have observed at the same time that guards had not been provided. He acted in this matter upon his own initiative, and the Railway could not anticipate that he would act in such a careless and negligent manner.

. "Had plaintiff tried to open the door in the ordinary way, with the use of ordinary force, and the door had fallen and injured him, an entirely different case would be presented. But where a party sees that an instrumentality is out of order and he undertakes to place it in order in a negligent manner, without the knowledge or authority of the owner, and he is injured, he becomes a victim of his own folly, for which the owner is not responsible.

"Writ Denied.            McKinney, Judge"

The brief of Appellee points out six allegedly disputed questions of fact which he contends justified submission of the issues of this case to a jury.

These will now be taken up and disposed of separately.

(1) Were the wedges so situated that a reasonable inspection by the N. C. and St. L. would have revealed them?

(2) If so, would the existence of the wedges have put the N. C. and St. L. on notice that the door was defective?

The burden of proof was on the Plaintiff to show that a reasonable inspection was not made and in this, Plaintiff failed. Even if the existence of the wedges, if discovered, would have put the Railway Company on notice that the door was defective, this obviously would only have charged the R. R. Co. with the necessity of having the door repaired; but its failure to do so, can not be assigned as the proximate cause of Plaintiff's injuries.

(3) What was the nature and extent of the inspection made by the N. C. and St. L.?

The burden was on Plaintiff to show some act or omission which constituted negligence on the part of the Railroad Company, or with reference to the inspection, that the inspection was improperly made. This burden was not carried. On the other hand the Railroad Company's evidence, which is undisputed, is to the effect that two ordinary and usual inspections were made.

(4) Was the defect obvious or concealed?

This proposition is foreclosed by the allegation in the Plaintiff's own declaration that the defect was concealed.

(5) What was the nature and extent of the force applied to open the door?

The Plaintiff's own statement that he told everybody to get out of the way, and that he stepped back to what he thought was a safe place when he held the chain, is sufficient to show on its face that the Plaintiff, himself, recognized the operation he had undertaken had some elements of danger, and that he himself, had assumed the risk which he was unwilling to have assumed by his fellow workers.

(6) What was the efficient moving cause of the injury;

the defective condition of the door, or the nature and extent of the force applied to open it?

This Court has foreclosed this matter by holding, as stated above, that the proximate cause of the injury, was the Plaintiff's own negligence.

"An assignment of error that there was no evidence to support a jury verdict, and that the Appellant was entitled to a directed verdict, requires an Appellate Court to review the evidence; but such review is not to determine where the truth lies or to find the facts, that not being the Appellate Court's province in jury cases. The review is only to determine whether there was any substantial evidence to support the verdict, and the Appellate Court must be governed by the rules safeguarding the constitutional right of trial by jury, which requires the Appellate Court to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." For this proposition, Appellee's brief cites D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901; Trentham v. Headrick, 35 Tenn. App. 330, 334, 245 S. W. (2d) 632, 634; Wesco Paving Co. v. Nash, 35 Tenn. App. 409, 414, 245 S. W. (2d) 782, 784; and France v. Newman, 35 Tenn. App. 486, 491, 248 S. W. (2d) 392, 394. Also, for the proposition that where the evidence is conflicting the question of negligence, either that of defendant or that of Plaintiff is for the jury to determine, he cites Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613; and Fortune v. McGinn, 23 Tenn. App. 504, 134 S. W. (2d) 898, rehearing denied in 24 Tenn. App. 36, 139 S. W. (2d) 256. And for the proposition that even where the facts are uncontro-

verted, the question of negligence is for the jury if the minds of reasonable men might draw different conclusions or inferences therefrom, he cites: Short Way Lines v. Thomas, 34 Tenn. App. 641, 241 S. W. (2d) 875; and Knoxville Traction Co. v. Brown, 115 Tenn. 323, 89 S. W. 319.

The law is as stated in these cases, and the only observation which this Court needs to make, with reference to same, is that the facts of each and everyone of these cases cited differ materially from the facts in the instant case. In no case has it been held proper for the jury to be permitted to speculate as to which of several equally logical inferences might be drawn from proven facts. The burden is on the Plaintiff to establish by competent evidence facts from which the logical inference is to be drawn, and that alone, is in favor of the Plaintiff's contentions.

It results that this case was not a proper one, in the opinion of this Court, to have been submitted to the jury. It is the opinion of this Court, in the instant case, that the Plaintiff has totally failed to show any act or omission as the proximate cause of Plaintiff's injuries. On the other hand, the evidence does conclusively establish by Plaintiff's own admission that he was guilty of dangerous conduct, the danger of which he recognized, and which did either solely and alone, proximately cause his injuries, or at least materially contributed thereto.

It results from the foregoing that the Appellant's appeal must be sustained in this cause, and the cause dismissed at Plaintiff's costs.

Avery, P. J. (W. S.), and Carney, J., concur.