Danny WYATT and Margie
Wyatt, Appellees,

v.

WINNEBAGO INDUSTRIES, INC. and
Chrysler Corporation, Appellants.

Court of Appeals of Tennessee,
Middle Section.

Dec. 2, 1977.

Certiorari Denied by Supreme Court
April 24, 1978.

J. G. Lackey, Jr., Malcolm L. McCune, Michael Miller, Nashville, for appellants.

Harry S. Lester, Michael Mondelli, Nashville, for appellees.

DROWOTA, Judge.

## OPINION

This discretionary interlocutory appeal under T.C.A. § 27–305 is brought by defendants from the denial of their summary judgment motion in this products liability action.

Plaintiffs Danny Wyatt and Margie Wyatt brought this action on March 5, 1976, against several defendants in the Third Circuit Court of Davidson County. It was alleged in the complaint that plaintiff Danny Wyatt had been seriously injured on April 18, 1975, while attempting to start the Winnebago Motor Home of his friend, Vir-

gil Martin. Since the vehicle would not start and since plaintiff could detect no loose connections on an initial inspection, he had Martin sit at the controls with the ignition off and move the gear selector to "park." Plaintiff then got under the vehicle and, with jumper cables, connected the battery directly to the starter. This had the effect of bypassing safety switches, which are built into the ignition system to prevent the vehicle from being started by that system while the transmission is in any gear other than neutral or park. The complaint alleged that, although the gear selector indicated that the vehicle was in park, it was in fact in a forward gear. When plaintiff attached the cable to the starter, the vehicle started, moved forward, and ran over him, causing serious injury.

Plaintiff alleged that the gear selector was defective, that it was in that condition when it left defendant Winnebago Motor Homes, and that the defect rendered the vehicle unreasonably dangerous to users such as plaintiff. Thus, plaintiffs asserted a claim in strict liability in tort against Winnebago, which was alleged to be the manufacturer of the vehicle. In an amended complaint, a similar claim was asserted against defendant Chrysler Corp., Inc., which allegedly made the chassis for the motor home. Plaintiff Danny Wyatt asked $300,000 from defendants for his injuries, and his wife Margie prayed for $50,000 for loss of her husband's services and other injury allegedly suffered by her.

The answers of defendants Winnebago and Chrysler denied liability and charged, *inter alia,* that the vehicle had been misused, that plaintiff was guilty of contributory negligence and that he had assumed the risk, and that any defect in the gear selector was not the proximate cause of the injuries. On December 20, 1976, and January 20, 1977, defendants Winnebago and Chrysler, respectively, filed similar motions for summary judgment. In these motions, defendants, elaborated on the grounds asserted in their answers as freeing them from liability. The motions were supported by excerpts from plaintiff Danny Wyatt's deposition, affidavits containing technical

material to illustrate the function of the ignition system and safety switches, and copies of two cases asserted to be closely in point.

The excerpts from plaintiff's deposition are important, and are heavily relied on by defendants. They reveal that plaintiff understood that he was bypassing the safety switches, and that as a result the vehicle would start whether it was in gear or not, as long as the starter was working. Plaintiff did not know why the vehicle would not start, and his object in connecting the starter directly to the battery was to determine whether or not the starter was defective.

On April 5, 1977, the trial judge filed his memorandum denying defendant Chrysler's motion for summary judgment. While the court found defendant's authorities "persuasive" and its argument "convincing," it found the case inappropriate for a grant of summary judgment "as a substitute for a trial to determine proximate cause." On April 25, 1977, the court entered an order disallowing the summary judgment motions of defendants Winnebago and Chrysler. In the same order, the court allowed a discretionary appeal to this Court, on the grounds that there is a controlling question of law as to which there is substantial ground for difference of opinion and that appeal would materially advance determination of the case. Defendants Winnebago and Chrysler have perfected such an appeal.

Defendants Winnebago and Chrysler each have made separate assignments of error. Both, however, make the same basic arguments, and we will classify and consider each of these arguments separately. Because defendants' arguments and defenses, if valid, would relieve them of liability even if the asserted defect in the gear selector were proven, and because defendants have chosen not to controvert the existence of the defect at this summary judgment stage, we must assume the defect's existence for purposes of this appeal.

■ The first general argument made by defendants is that the trial court misconstrued the nature of summary judgment.

Summary judgment is to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. C.P. 56.03. *See Phillips v. Pittsburgh Consolidated Coal Co.,* 541 S.W.2d 411 (Tenn. 1976). The court's role in ruling on the motion is similar to its role in ruling on a motion for a directed verdict, and it must view the pleadings and evidence before it in the light most favorable to the opponent of the motion. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976). The standard quoted above from Rule 56.03 applies each time a motion for summary judgment is made, and it requires a determination to be made on a case-by-case, issue-by-issue basis. If the trial court implied in its memorandum, as defendants argue, that the summary judgment procedure is never a proper substitute for trial in determining the issue of proximate cause, we certainly do not agree. That issue, like any other, may be determined on summary judgment if the test of Rule 56 is met with regard to it. We turn now to consider whether or not Rule 56 authorizes a grant of summary judgment on any of the issues raised by defendants in this case.

Defendants have raised several grounds, each of which, they contend, entitles them to summary judgment in this case. Each ground is alleged to negate an element of, or constitute a defense to, plaintiffs' cause of action in strict tort liability. This theory of recovery in products liability cases really imposes "strict" liability only in the sense that the nature of the defendant's conduct in dealing with the defective product, that is, whether he acted intentionally, negligently, or innocently, is not important on the issue of his liability. Such a strict liability, a recent but widely accepted development in the law, has been adopted in Tennessee. *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967); *Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966). The cause of action has been defined by our Supreme Court, quoting from the Restatement (Second) of Torts, as follows:

" § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

  (a) the seller is engaged in the business of selling such a product, and

  (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

  (a) the seller has exercised all possible care in the preparation and sale of his product, and

  (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

*Ford Motor Co. v. Eads,* 224 Tenn. 473, 457 S.W.2d 28, 30 (1970).

Following the elements of this cause of action in the order established by the quoted passage, we come first to defendants' contention that they should have been granted summary judgment because the alleged defect in the motor home did not render it "unreasonably dangerous." In order to recover, a plaintiff must show that the product was "in a defective condition unreasonably dangerous to the user . . . ." *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516, 519 (Tenn.1973); *Eads, supra; Parker v. Warren,* 503 S.W.2d 938, 945 (Tenn.App.1974). Dean Prosser says the following with regard to this requirement:

The prevailing interpretation of "defective" is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety. It has been said that this amounts to saying that if the seller knew of the condition he would be negligent in marketing the product.

W. Prosser, Law of Torts § 99 at 659–60 (4th ed. 1971) (citations omitted). In the instant case, we cannot say as a matter of law that a Winnebago Motor Home whose gear selector shows the vehicle to be in a gear other than that in which it actually is does not come within this definition of an unreasonably dangerous defective product.

Defendant Winnebago cites *Orfield v. International Harvester Co.*, 415 F.Supp. 404 (E.D.Tenn.1975), which adopts under Tennessee law comments from Restatement (Second) § 402A saying that the product's dangerous condition must be one "not contemplated" by the ultimate user. That case is affirmed, and its principle well explained, in *Orfield v. International Harvester Co.*, 535 F.2d 959 (6th Cir. 1976), and we will not expound on it further. It is enough to say that, on the record before us in the instant summary judgment proceeding, it is not undisputed that plaintiff contemplated the alleged defect in the gear selector as a possible cause of the motor home's problem at the time of the accident. Defendant Winnebago relies heavily on the following excerpt from plaintiff's deposition:

> Now Virgil before I start this thing you get up in it, and you put this thing in park, the handbrake on, and make damned sure it doesn't run over me, because I'm going to start it; if that starter is not burned out I'm going to start this damned thing.

We do not read this as establishing that plaintiff contemplated the defect in the gear selector. On the contrary, his instruction to put the vehicle in "park" is some indication that plaintiff assumed the selector to be working properly. Further, defendant overlooks other portions of the deposition, especially pages 27–28, in which plaintiff seems to say he did not contemplate the defective selector at the time, although in retrospect he could see that that could have caused the problem in starting the vehicle. The record before us supports the conclusion that plaintiff knew that his method of starting the vehicle would start it even if it was in gear, and that had he contemplated the defective gear selector he also would necessarily have contemplated the possibility of the accident which in fact occurred. It does not, however, support the conclusion that he contemplated the defective selector. At most, a controverted issue of fact is presented on that question. Again, then, we are unable to conclude as a matter of law that the motor home was not unreasonably dangerous within the meaning of Tennessee law. It is a point on which reasonable minds could clearly differ, at least on the record that has been developed to this point in the case. It follows that defendants were not "entitled to a judgment as a matter of law" under Rule 56.03 on the issue of the defective and unreasonably dangerous condition of the motor home.

◼ Next, defendants urge that the trial court erred in failing to grant them summary judgment on the ground that any defect in the motor home's gear selector was not the proximate cause of plaintiffs' injuries. Proximate cause, of course, is a concept that was developed in the law of negligence. *See Prosser, supra*, §§ 41–45. Its first requirement is that the defendant's act or, in this products liability case, the defect in the product, be a cause in fact of the injury. *See* Prosser, *supra*, § 41. This means simply that the circumstances must be such that the injury would not have occurred but for the defect. Causation in fact is seldom a problem, and in the instant case it would be absurd to say that the only reasonable conclusion is that the accident would have occurred even had no defect existed.

◼ Proximate cause, however, involves much more than causation in fact. It is really a concept that attempts to define, by means of many factors, when a defendant's liability will be limited "even where the fact of causation is clearly established." Prosser, *supra*, § 42 at 244. The issue of proximate cause is one to be decided "upon mixed considerations of logic, common sense, justice, policy and precedent." *Mullins v. Seaboard Coastline Railway Co.*, 517 S.W.2d 198, 201 (Tenn.App. 1974); *Carney v. Goodman*, 38 Tenn.App.

55, 61, 270 S.W.2d 572, 575 (1954). Many "tests" have been propounded to determine when a cause is "proximate," Prosser, *supra*, §§ 42–43, and several have been stated in Tennessee cases. In *Tennessee Trailways, Inc. v. Ervin*, 222 Tenn. 523, 438 S.W.2d 733 (1969), for example, our Supreme Court cited older Tennessee authority in support of the following definition, which appears to confuse proximate cause with its simpler component part, causation in fact:

> In Tennessee, proximate cause has been described as that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted.

222 Tenn. at 528, 438 S.W.2d at 735. Other cases characterize an act as proximate cause if it is a "substantial factor" in bringing about the injury. *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217 (1965); *Carney, supra.* Further formulations and cases supporting them may be found in 15 Tennessee Digest, *Negligence* § 56 *et seq.* Some recent cases, particularly those involving the question of whether an "intervening cause" will relieve the defendant of liability, have employed the test of whether the defendant should reasonably have foreseen the injury. *Eads, supra; Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864 (1969); *Lancaster, supra.* The defendant need not be able to foresee the exact manner of the injury's occurrence, but only its general nature. *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 330 S.W.2d 569 (1959); Prosser, *supra*, § 43 at 268–69. It appears that the foreseeability concept is the one with the most widespread acceptance as a "convenient formula" for disposing of the proximate cause issue. Prosser, *supra*, § 43 at 267.

▮ Enough has been said to indicate the substantive nature of the proximate cause problem. Procedurally, the issue is one for the jury to decide, unless the uncontroverted facts and the inferences to be drawn from them make it so clear that all reasonable men must agree on the outcome. *Frady v. Smith*, 519 S.W.2d 584 (Tenn.1974); *Kroger Co. v. Giem*, 215 Tenn. 459, 387 S.W.2d 620 (1964); *Bradshaw v. Holt*, 200 Tenn. 249, 292 S.W.2d 30 (1956); *Loftis v. Finch*, 491 S.W.2d 370 (Tenn.App. 1972); *Spain v. Livingston*, 59 Tenn.App. 346, 440 S.W.2d 805 (1968). In the instant case, regardless of which "formula" or combination of formulae is employed, it is not clear that reasonable minds could not differ on whether plaintiffs' injuries were proximately caused by the defective gear selector in the motor home. On the record before us, for example, we do not think a conclusion that plaintiff was injured in reliance on the defective indicator and that that reliance was foreseeable, or that the defect was a substantial factor in causing the injury, would be wholly beyond the limits of reasonableness. Thus, defendants were not entitled to summary judgment on the issue of proximate cause.

▮ The third ground on which defendants argue that they were entitled to summary judgment raises an issue closely related to proximate cause in the strict liability theory. It concerns the rule that a defendant will not be held liable for injury occurring in the course of an abnormal use of the product which he could not reasonably foresee. *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973); Prosser, *supra*, § 102. Defendants, citing *Eads, supra*, argue that plaintiff's method of starting the motor home by connecting the starter directly to the battery constituted an unforeseeable misuse of the vehicle as a matter of law, but we cannot agree. That the *Eads* case is not controlling here is explained below. Neither the abnormality of plaintiff's use of the vehicle nor its unforeseeability is so clear that reasonable minds could not differ, and defendants were properly denied summary judgment on this ground.

▮ Defendants' final major argument in favor of their right to summary judgment is that plaintiff assumed the risk. Assumption of the risk is the only form of contributory negligence giving rise to a defense to strict liability in Tennessee, and in

order to assume the risk in such a case, the plaintiff must "voluntarily and unreasonably encounter a known danger." *Ellithorpe, supra,* at 521. We have already pointed out that the record before us at this stage does not support the conclusion that plaintiff had in mind the possibility of a defective gear selector when he started the vehicle and was injured. Thus, we can hardly say that it is so clear that plaintiff voluntarily and unreasonably encountered a known danger that reasonable minds could not differ on the point. Accordingly, defendants were not entitled to summary judgment on the ground that plaintiff assumed the risk.

Because it has been heavily relied on by both defendants, we will briefly discuss *Ford Motor Co. v. Eads,* 224 Tenn. 473, 457 S.W.2d 28 (1970). While that case involved the "hot-wiring" of a tractor so as to bypass the safety switch and allow the vehicle to be started in gear, we think it differs materially from the instant case. First of all, the defect in the vehicle in *Eads* was in the starter itself and it did not have the effect of indicating to the operator that the vehicle was in a gear other than the one in which it actually was. Further, unlike in the instant case, the Court in *Eads* found that, prior to the "hot-wiring," the defect rendered the vehicle unstartable in any gear. This led the Court to the important conclusion that

> . . . all reasonable men must agree that, instead of being a defective tractor and unreasonably dangerous, this defective tractor could not be started, and was dangerous to no one in its inert condition.

224 Tenn. at 481, 457 S.W.2d at 31. The plaintiff in *Eads* was not misled by the defect into thinking that the vehicle was in neutral when it was actually in a forward gear, but apparently formed this erroneous belief after moving the gearshift lever with his hand. We think these differences in circumstances explain and justify the difference between the holding of *Eads* and our holding in the instant case on the issue of whether the vehicle in each case was defective and unreasonably dangerous.

It is the conclusion that the vehicle was not unreasonably dangerous on which *Eads* seems to rest. But even if we consider the issue of proximate cause, we find that *Eads* differs significantly from the instant case. In *Eads* plaintiff's brother had previously "hot-wired" the defective tractor without plaintiff's knowledge, so that plaintiff's act of starting the tractor immediately before it injured him was not causally related to the defect. In the instant case, the alleged defect not only caused plaintiff both to "hot-wire" the vehicle and to start it by this method immediately before his injury, but could possibly and not unreasonably be found to have misled plaintiff into lying under the vehicle at the time by indicating that the vehicle was in park when it was actually in a forward gear. Further, we do not read *Eads* as holding that "hot-wiring" is unforeseeable as a matter of law under all circumstances so that no antecedent event can ever be held the proximate cause of an injury in which it is involved. Rather, proximate cause was found lacking as a matter of law on the facts of *Eads* as the Court there saw them. In the instant case, as we have already explained, we do not find that the facts in the record at this stage present such a clear case of absence of proximate cause that reasonable men could not disagree on the issue.

Similarly, it is urged by defendants that *Eads* stands for the proposition that "hot-wiring" constitutes misuse of a vehicle as a matter of law. We find no reference in *Eads*, however, to the issue of misuse of the product, and we do not think that any such holding was intended. The Court in *Eads* found the "hot-wiring" and subsequent injury unforeseeable under the circumstances of that case, but did not purport to lay down a rule of law applicable in every case on the foreseeability of "hot-wiring" with regard either to misuse or to proximate cause.

Finally, we note that defendants also rely heavily on the recent Georgia case of *McNeely v. Harrison,* 138 Ga.App. 310, 226 S.E.2d 112 (1976), on the issue of proximate cause. The facts of that case admittedly

differ in no material respect from those in the instant case. With all due respect, however, we cannot agree with the conclusion of the Court in that case that proximate cause was lacking as a matter of law, and we are bound by neither its reasoning nor its holding. We simply cannot accept the Georgia court's conclusion that "[t]he defect . . . did not cause the car to start and lunge forward against the plaintiff." 226 S.E.2d at 114. While neither the defect in *McNeely* nor that in the instant case of itself directly caused the vehicle to start on the particular occasion of the accident, it certainly was a causative factor in each case in the vehicle's moving forward. This is because the defect caused the operator to think that when the gear indicator was in "park," the vehicle was safely in park gear. The operator in each case relied on this erroneous impression and moved the lever to the "park" position before the vehicle was started. In short, we do not agree with *McNeely*, and we choose not to follow it.

Since we have found that none of the grounds asserted by defendants entitles them to a judgment as a matter of law at this point, it follows that the trial court was correct in denying the motions for summary judgment. In affirming his decision, we emphasize that this opinion is intended not as a judgment of the strength or weakness of the merits of plaintiffs' case, but as an application of Rule 56.03 and other legal standards to these summary judgment motions.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.