**Nora RICKER et vir., Plaintiffs,**

v.

**ZINSER TEXTILMASCHINEN GmbH, Defendant.**

**No. CIV–2–77–169.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Nov. 28, 1978.

On Motion for Judgment Notwithstanding Verdict Jan. 3, 1979.

See also, D.C., 506 F.Supp. 1.

---

Kyle K. King and K. Kidwell King, Greeneville, Tenn., for plaintiffs.

F. Graham Bartlett and Robert B. Ray, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

The plaintiffs claim the defendant is liable strictly to them without a showing of specific fault and for negligent omissions. The defendant moved for a directed verdict at the conclusion of the plaintiffs' evidence.

There is evidence from which the jury might find that the machine on which Ms. Ricker was working when she was injured was sold by the defendant; that it was defective and unreasonably dangerous to a user when it left the defendant's premises; and that it was in the same condition when Ms. Ricker was injured at the immediately foregoing time. There is evidence also from which the jury might find that the defendant was negligent in failing to design and construct properly such machine, place safety devices thereon and warn intended users of inherent dangers therein.

To establish the liability of the defendant, it was incumbent upon the plaintiffs to prove in addition that the defective condition of such machine proximately caused the plaintiffs' injuries and damages, *Browder v. Pettigrew* (Tenn., 1976), 541 S.W.2d 402, 405, and that the negligence of the defendant was such a proximate cause, *Nashville, C. & St. L. Ry. v. Harrell* (1937), 21 Tenn.App. 353, 363–364[12], 110 S.W.2d 1032, certiorari denied (1937). However, it is sufficient if it was shown that the conduct of the defendant proved a substantial factor in causing the harm to the plaintiffs. *Lancaster v. Montesi* (1965), 216 Tenn. 50, 390 S.W.2d 217, 221[8].

Ms. Ricker testified that she was injured as she undertook to rethread this machine, when some unidentified (and never discovered) hard and rough substance on its feeder-roller came in contact with her finger(s) and pulled her finger(s) and hand into the machine. She was the only eyewitness to this accident. The expert witness Mr. Sims expressed his professional opinion that the most probable explanation for that which Ms. Ricker said happened to her was that bits of nylon filaments created a hard and rough substance on such roller. The problem is whether the absence of a guard protecting Ms. Ricker from the roller was, nevertheless, a substantial factor in causing the resulting harm to her and her former husband.

The latest discussion by the appellate courts of Tennessee concerning the problem of proximate cause states that this issue is one to be decided " * * * 'upon mixed considerations of logic, common sense, justice, policy and precedent.' * * * " *Wyatt v. Winnebago Industries, Inc.,* C.A. Tenn. (1977), 566 S.W.2d 276, 280[8], certiorari denied (1978). It appears to this Court that it would be logical and an exercise in common sense for the jury to conclude that, had the guard been in place, Ms. Ricker would have not been injured as seriously as she was.

The *Wyatt* court, *supra*, appears also to have reaffirmed the rule for Tennessee that " * * * 'proximate cause * * * [is] * * * that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted.' * * " *Ibid.*, 566 S.W.2d at 281.

Although it is not without doubt in this Court's view, the Court has reached the conclusion that it cannot be said as a matter of law, see *Lawson v. U-Haul Company,* C.A. 6th (1972), 462 F.2d 1337, 1338[1], that the omission of the defendant to provide the guard for the feeder-roller of the machine was not a substantial cause of preventing Ms. Ricker from sustaining the injury inflicted upon her after the hard and rough substance appeared on the feeder-roller of the machine.

Accordingly, the defendant's motion was overruled.

## ON MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT

The jury herein returned a verdict for the plaintiffs Mr. and Mrs. Ricker against the

defendant Zinser Textilmaschinen, GmbH, and awarded her damages for $325,000 and him damages of $15,000. The defendant interposed a timely motion for a judgment notwithstanding the verdict, Rule 50(b), Federal Rules of Civil Procedure, or, in the alternative, for a new trial, Rules 59(a), (b), Federal Rules of Civil Procedure.

▆ The grounds urged in support of these motions are the same. All 6 thereof relate to matters involved in the return of the verdict by the jury, to its award of damages, or to the alleged error of the Court in denying the defendant's motion (and renewed motion) for a directed verdict. As a motion for a judgment notwithstanding the verdict serves merely to renew a motion for a directed verdict, *O'Neill v. Kiledjian*, C.A. 6th (1975), 511 F.2d 511, 513[2], the defendant is not permitted now to add to its renewed motion additional grounds, *Sulmeyer v. Coca-Cola Company*, C.A. 5th (1975), 515 F.2d 835, 846[1], certiorari denied (1976), 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 431.

However, ground no. 4 thereof,* while alluding to the ultimate action of the jury, relates also to a ground of the defendant's motions for a directed verdict. As the Federal Rules of Civil Procedure are to be construed to secure, *inter alia,* " * * * the just * * * determination of every action, * * * " Rule 1, Federal Rules of Civil Procedure, it will be considered by the Court on this initial motion as if it were artfully drawn.

In support of this ground, the defendant (by brief) relied mistakenly on *Orfield v. International Harvester Co.,* C.A. 6th (1976), 535 F.2d 959, in which this Court (and judge) directed a verdict for the defendant, see D.C.Tenn. (1975), 415 F.Supp. 404, at the conclusion of the plaintiff's proofs. There, a products liability action was brought against the manufacturer-seller of a bulldozer for injuries sustained by Mr. Orfield, its operator, in the course of a windrowing operation. Mr. Orfield was struck by a tree, because, allegedly, the bulldozer was not equipped with an overhead protective canopy. This Court found from Mr. Orfield's undisputed testimony that he was fully aware before and at the time he was thus struck of the facts that the bulldozer he was operating was not equipped with such a safety device; that a variety of accidents could result, and had resulted, from the use of bulldozers' lacking canopies in the course of windrowing operations; and that he proceeded to engage voluntarily in the windrowing operation, even though he contemplated that the bulldozer, without a canopy, would be dangerous to him in such operations. The Court, under those circumstances, concluded as a matter of law that the bulldozer was not "defective" within the contemplation of the rule of strict liability in tort; and that, even if deemed "defective," the machine was not unreasonably dangerous under that rule, to an extent beyond that which would be contemplated by the ordinarily experienced operator of such bulldozer, such as Mr. Orfield (who had been operating such machines for 30 years). That is an entirely different factual situation from that presented herein. *Cf.* memorandum opinion herein of November 28, 1978.

For such reason, the motion of the defendant to have the verdict herein and the judgment entered upon it set aside and to have judgment entered in accordance with its motion for a directed verdict, Rule 50(b), *supra,* hereby is

OVERRULED.

▆ What has been said hereinabove suffices to dispose of the defendant's alternative motion for a new trial on the grounds that the verdict of the jury for the plaintiff is against the clear weight of the evidence, was contrary to the physical facts established in the proof, and that the plaintiff assumed voluntarily the risk of her injury or was guilty of proximate contributory

---

\* There was " * * * undisputed proof that the plaintiff Nora Ricker was fully aware of the dangers inherent in the machine manufactured by the defendant Zinser, and Nora Ricker, the plaintiff, assumed the risk of injury under the circumstances; or she was guilty of proximate contributory negligence." Ground 4 of the defendant's alternative motion, *supra*.

negligence. See again memorandum opinion herein of the immediately foregoing date. Remaining is the ground for a new trial that the awards of damages in the verdict are excessive.

As indicated earlier, there is no showing, beyond mere unsupported conclusions by defendant's counsel, of prejudice, caprice or sympathy on the part of the jury. " * * * In the absence of a showing of bias, passion, or corruption on the part of the jury, excessiveness of the jury verdict is a question primarily addressed to the trial court's discretion. * * * " Stengel v. Belcher, C.A. 6th (1975), 522 F.2d 438, 444[16], certiorari granted (1976), 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760, certiorari dismissed (1976), 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269. The latest definitive exposition of the rule in Tennessee regarding the excessiveness of an award of damages in a personal injury action seems to have emanated 35 years ago from the late Chief Justice Hamilton S. Burnett, when he was a judge of an intermediate appellate court. He quoted a special justice of the Tennessee Supreme Court, for purposes of reiteration, as having stated, inter alia: " * * * The amount of the verdict is primarily for the jury to determine. * * * " Reeves v. Catignani (1928), 157 Tenn. 173, 176, 7 S.W.2d 38. Then Judge Burnett added: " * * * It is our duty to take into consideration the nature and extent of the injury, the suffering, expenses, diminution of earning capacity, age, expectancy of life and amount awarded in other similar cases in our decision of this question [of the excessiveness of an award]. * * * " Town of Clinton v. Davis, C.A. (1943), 27 Tenn.App. 29, 42[8], 177 S.W.2d 848, certiorari denied (1944).

Mrs. Ricker's damages are great. Her hand was caught in the machine sold by the defendant for 20 to 25 minutes before it could be extricated. During that time she endured physical pain, which she described as more drastic than that which she suffered in childbirth. The pain was accompanied also by severe mental anguish as she struggled to draw attention to her alarming plight, which resulted in third-degree friction burns to the surfaces of the palm, fingers and thumb of her right hand. She suffered a permanent impairment of 65% of the function of her right hand. She was hospitalized for a month during which time she underwent surgical procedures 5 different times, 2 of these being necessary to the amputation of all of her right index finger, concomitant with which grafts of her skin were taken from her right side. She anguished over the cosmetic disfigurements which resulted, especially as they related to her interpersonal relationship with her then-husband and coplaintiff.

Mrs. Ricker was an activist in all her undertakings. It was anguishing to her mentally when her (then) husband was required to do all the things she had theretofore done for herself, for him, and for their child. She testified that she became downhearted because she " * * * couldn't do for myself anymore * * * " and spent much of her enforced idleness in crying. She has no control of her right hand and sought to reeducate herself, with some success, to resume after 5 or 6 months some of her previously normal household duties with the use of her left hand; she soon reached the maximum extent of this reeducational process, however. She is deprived of playing tennis and softball, shooting skeets, working with tobacco and in the family garden and "pulling" corn, as well as indulging in her favorite pasttime: deer hunting. Mrs. Ricker has the feeling, real or imagined, that her condition caused relations with her former husband (and coplaintiff) to become strained. She accused him of seeking female companionship elsewhere, and they have been divorced since her injury.

Mrs. Ricker incurred, as of September 27, 1978, medical expenses of $16,353.67 and lost gross wages of $15,132.32. She has applied unsuccessfully for new employment, and her hope of resuming work outside her home is thwarted by her conclusion that " * * * nobody will hire me. * * * " Compounding whatever chance she might otherwise have of continuing to earn wages is the fact that she has always lisped, so severely that it was necessary for an inter-

preter to translate her testimony at the trial herein. In this situation, with a child and no husband and no realistic opportunity of rehabilitation of her earning capacity, Mrs. Ricker's life expectancy, from trial, is 43.34 years.

■ In the face of those facts, none of which were disputed seriously at trial by the defendant, this Court cannot say that the award to Mrs. Ricker by the jury of $325,000 in damages is excessive. This is less than $8,000 annually for her expectancy of life, in a period when inflation, the high cost of living, and impaired purchasing power of a dollar are factors. *Morvant v. Const. Aggregate Corp.*, C.A. 6th (1978), 570 F.2d 626, 631–632[3], quoting at length from and explaining *Bach v. Penn Central Transportation Co.*, C.A. 6th (1974), 502 F.2d 1117; *cf. Waller v. Skeleton*, C.A. (1948), 31 Tenn.App. 103, 212 S.W.2d 690, 698[18] certiorari denied (1948), 186 Tenn. 433, 211 S.W.2d 445, cited with approval in *Foster & Creighton Co. v. Hale*, C.A. (1949), 32 Tenn.App. 208, 222 S.W.2d 222, 226–227[12], and *Wesco Paving Co. v. Nash*, C.A. (1951), 35 Tenn.App. 409, 245 S.W.2d 782, 787[9]; but see as possible *contra: Murphy v. Eaton, Yale & Towne, Inc.*, C.A. 6th (1971), 444 F.2d 317, 328[8], [9, 10].

The damages sustained by Mr. Ricker were considerably less and extended only over an 18-month period until the plaintiffs were divorced. His wife testified that, after she returned home from the hospital following her injury, Mr. Ricker " * * * did everything for me, * * * " which, while unstated, presumably included all the household duties which Mrs. Ricker had performed theretofore for her family. He testified that he did all the farm-type work his wife had formerly assisted in doing, such as working the garden, tying tobacco leaves, and harvesting ears of corn. These were the only services of his wife of which Mr. Ricker was deprived. Both plaintiffs testified that she was no longer able to engage with him in the sport of hunting deer, and Mr. Ricker was deprived of her companionship in this activity. There was no evidence whatever that Mr. Ricker was deprived as a proximate result of her injury of sexual relations with his wife.

■ The jury might have encountered difficulty in separating the value of those services Mrs. Ricker had performed previously for her husband from the value of those same services to herself. He was entitled to an award of damages for the loss of his former wife's services during their marriage only because loss of services constitutes a part of lost consortium, and such an award must have included only the value of Mrs. Ricker's services which Mr. Ricker proved he lost as a result of her injury. *Lamb v. Jones Wholesale Co., Inc.*, D.C. Tenn. (1978), 454 F.Supp. 129[1]. The loss Mr. Ricker suffered herein could not have been a large one in monetary terms, and the evidence does not support his loss of $15,000.

■ The correct standard for determining the excessiveness of a verdict is the amount which, under the evidence presented, was the difference between the jury's award and the maximum that the jury could have found reasonably to be compensatory for the loss sustained. *Ibid.*, 454 F.Supp. at 130[2]. The outer limit of the maximum range as the result of the inferences which the jury might have drawn from the evidence offered in support of Mr. Ricker's claim is believed by this Court to have been $1,800.

Consequently, the defendant's motion for a new trial as to the claim of the plaintiff Mrs. Ricker hereby is OVERRULED. It hereby is

ORDERED that a new trial will be granted the defendant on the issue of the damages of the plaintiff Mr. William Ricker, unless within 30 days herefrom he shall produce and file in the office of the clerk of this Court at Greeneville, Tennessee a remittitur of $13,200 of the damages awarded him by the jury herein. In case of such remittitur, the defendant's motion for a new trial on the ground of the excessiveness of the verdict of the jury is DENIED.