966 F.2d 1451
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The BOARD OF EDUCATION OF the MEMPHIS CITY SCHOOLS,
Plaintiff-Appellant,
v.
The DOW CHEMICAL COMPANY, Defendant-Appellee.
 No. 91-6088.
 United States Court of Appeals, Sixth Circuit.
 June 12, 1992.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff, a school board, appeals from the district court's grant of summary judgment. The Board sought to recover the cost of bringing a school building into compliance with the fire code. The defendant agreed to pay for the cost of repairing a wall that allegedly was defective as a result of using one of the defendant's products in its construction. The plaintiff claims that a fire marshal was required to authorize the repairs and that, to obtain his approval, the plaintiff was forced to repair code violations that had existed for many years. Finding that the plaintiff's replacement of the wall was not a proximate cause of the expenditures made to cure the code violations, we affirm the grant of summary judgment.
 
 I.
 
 2
 The plaintiff, the Memphis Board of Education, commenced construction of Craigmont High School in 1972. During the planning and the construction, state fire inspectors brought numerous code violations to the attention of the Board. The Board apparently did not address all of the violations, and Craigmont opened in 1973 with some of the code violations still present.
 
 
 3
 The mortar in the school's exterior wall contained "Sarabond," a product manufactured by the defendant, the Dow Chemical Company. By 1986, the wall began to deteriorate, allegedly because the Sarabond corroded metal components in the wall.
 
 
 4
 The Board hired an architectural firm to oversee the reconstruction of the wall. Charles Coleman, an employee of the firm, developed a design that was implemented in 1988. While working on the project, Coleman discovered the fire code violations. Coleman apparently became concerned that the state fire marshal's office would not grant a permit to reconstruct the wall unless the Board repaired the fire code violations. The Board eventually decided to cure the violations as part of the wall reconstruction project.
 
 
 5
 The Board brought this diversity action against Dow in January 1987. In 1989, the parties reached a partial settlement. Dow agreed to pay the Board $6.2 million to cover the cost of rebuilding the wall. The settlement also stipulated that the cost of curing the fire code violations was $1,342,461, but the parties could not agree on whether Dow was liable for the cost of those repairs. Therefore, the parties agreed to submit that issue for trial and drafted a consent order, which provided:
 
 
 6
 The only issue to be decided is whether Dow is liable for the stipulated sum to upgrade the life and fire safety code items, that is, whether the replacement of the exterior Sarabond masonry is a proximate cause of the proposed upgrading of the existing fire system to comply with life and fire safety codes.
 
 
 7
 (App. 74).
 
 
 8
 Dow moved for summary judgment on this remaining issue in November 1990. The district court granted the motion nine months later, and the Board filed this appeal.
 
 II.
 
 9
 The Board contends that the district court erred by reformulating the parties' stipulated issue and then granting summary judgment to Dow on the reformulated issue. According to the Board, the district court viewed the issue as whether Dow's conduct proximately caused the Board to incur the code repair expense. The Board argues that the stipulated issue asks only whether the need to replace the wall proximately caused the expense. Since the settlement agreement arguably is ambiguous and since the resolution of contractual ambiguities is a question of fact, we construe the ambiguity in favor of the Board, the nonmoving party to the summary judgment motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, the only question on appeal is whether the Board created a genuine issue of fact as to whether the replacement of the Sarabond masonry proximately caused the Board to incur the fire code expense.
 
 
 10
 An event is a proximate cause of an injury only if it is a "substantial factor" in bringing about the harm. Restatement (Second) of Torts § 431(a); Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217, 221 (1965). Tennessee courts have held that the event, at a minimum, must be a cause-in-fact of the injury to satisfy the proximate causation requirement. See Tennessee Trailways, Inc. v. Ervin, 222 Tenn. 523, 438 S.W.2d 733, 735 (1969); Wyatt v. Winnebago Indus. Inc., 566 S.W.2d 276, 280 (Tenn.Ct.App.1977). The cause-in-fact test is satisfied only if the harm would not have occurred but for the earlier event. Wyatt, 566 S.W.2d at 280.
 
 
 11
 However, under the substantial factor test, even if the event is a cause-in-fact of the injury, it is not necessarily a proximate cause of the harm. Id. at 280-81. The ultimate determination turns on "mixed considerations of logic, common sense, justice, policy and precedent." Carney v. Goodman, 38 Tenn.App. 55, 270 S.W.2d 572, 575 (1954).
 
 
 12
 We therefore turn first to the question of whether the replacement of the Sarabond masonry was a cause-in-fact of the Board's injury. The Board concedes that the fire code violations are completely unrelated to the wall. The Board also concedes that the violations were present when Craigmont opened in 1973. The Board claims, however, that it was forced to fix the code violations in order to obtain a permit to repair the deteriorating wall. Therefore, the argument continues, the deteriorating wall caused the Board to incur the expense of bringing Craigmont up to code.
 
 
 13
 We first observe that the evidence in the record suggests that the Board could have rebuilt the wall without addressing the code violations.[2] However, even assuming that the fire marshal's office would have required the Board to cure the code violations, the need to repair the wall was not a cause-in-fact of the fire code expense.
 
 
 14
 The code violations "caused" the Board's expense and existed independently of the crumbling wall. Even if the wall had not contained Sarabond and had not crumbled, the code violations would have been present. At the very most, the deteriorating wall brought the violations to the attention of the authorities at a specific time. Presumably, the Board would have been forced to repair the violations at some point in the future.[3]
 
 
 15
 The Board's need to repair the wall is therefore not a cause-in-fact of the Board's fire code expense. Accordingly, summary judgment is appropriate.[4]
 
 
 16
 AFFIRMED.
 
 
 17
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 18
 The majority holds that repair of the deteriorating wall was not a cause in fact of the necessity of correcting the code violations, because "[a]t the very most, the deteriorating wall brought the violations to the attention of the authorities at a specific time." Majority op. at 4. This "timing" argument is problematic. For example, consider the argument in the context of a wrongful death case. Under the logic of the majority opinion, one could argue that the fact that the defendant may have caused the death of a person is irrelevant, because the person would have died eventually anyway; it was only a matter of timing.
 
 
 19
 I do not mean to suggest that the majority would reach this absurd result; I suggest only that we must be careful of the rationale that we endorse, in the absence of any Tennessee law that we are required to follow. Under the facts viewed in the light most favorable to plaintiff, repair of the wall necessitated upgrading the fire system, because its contractor could not obtain approval to do the work independently. This view of the facts makes repair of the wall a cause in fact of correcting the fire and safety code violations.
 
 
 20
 Reaching the issue of proximate cause, however, the Board's case quickly evaporates. An elementary proposition of Tennessee law (and tort law generally) is that one is only responsible for damages that are reasonably foreseeable; this statement is one definition of proximate cause. Ward v. University of the South, 354 S.W.2d 246, 250 (Tenn.1962). A construction-supply company like Dow cannot reasonably foresee that the damage that its product may cause to a building cannot be separately repaired. This statement does not imply that the company is responsible for the wall alone. Dow would be expected to reasonably foresee that a weakened wall might fall on someone or that the collapse of the wall might cause damage to the building's roof or plumbing, and Dow could be held liable for these reasonably foreseeable damages. Dow cannot be expected to foresee, however, that the Board would be unable to hire a company that could repair only the damage that Dow directly caused. The existence of such a situation--where repair of the wall necessitates upgrading the building's fire system--makes Dow's Sarabond a cause in fact, in my view, of the necessity of upgrading the building's fire system, but it does not follow that the situation was reasonably foreseeable. Ordinarily, a jury would decide the issue of reasonable foreseeability, but the instant situation is so clear that no reasonable jury could find for the Board on the issue of proximate cause.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 For example, William Wamsley, an official from the state fire marshal's office, testified that his office would have allowed the Board to repair the wall without curing the code violations if the Board had provided a reason why it could not address the violations at that time
 
 
 [3]
 We are not impressed with the Board's argument that the authorities would never have learned of the code violations but for the deteriorating wall. In effect, the Board blames Dow for preventing the Board from getting away with violations of laws that were intended to protect the lives of schoolchildren and employees
 
 
 [4]
 Even if we were to find that the repairs could have been a cause-in-fact of the Board's fire code expenditure, we would not find a genuine issue as to whether it was a substantial factor, as the code violations themselves were the dominant cause of the expenditure