# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 27, 2010 Session

## GERALD AND HELEN LILLY, INDIVIDUALLY AND AS GUARDIANS AND NEXT OF KIN OF  TADARIUS M. MOORE, DECEASED v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06C-954      Amanda McClendon, Judge**

---

**No. M2010-00085-COA-R3-CV - Filed November 16, 2010**

---

Plaintiffs, the guardians and grandparents of a fourth-grader at Amqui Elementary School filed this wrongful death action against the Metropolitan Government of Nashville and Davidson County. While at school, the decedent became ill. After school employees cared for him for a period of time, his condition worsened; school employees then called 911 and performed CPR while awaiting for the paramedics. Tragically, the child died on the way to the emergency room. Plaintiffs allege that Defendant did not properly train or supervise its school employees and that Defendant's employees were negligent in failing to secure proper medical care. The trial court summarily dismissed the action upon findings that Defendant had not breached a duty to the decedent and that its actions were not the proximate cause of decedent's death. Plaintiffs appeal. We reverse finding there are genuine issues of material fact that preclude summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Steve C. Norris, Nashville, Tennessee, for the appellants, Gerald and Helen Lilly, Individually and as Guardians and Next of Kin of Tadarius M. Moore, Deceased.

Sue B. Cain, Philip D. Baltz, James E. Robinson, and Cynthia E. Gross, for the appellee, the Metropolitan Government of Nashville and Davidson County.

# OPINION

This action arises from the tragic death of nine-year-old Tadarius Moore, who suffered from spinal muscular atrophy; as a result of this condition, he had limited muscle control, was unable to sit or walk, could not hold his head up on his own, and he frequently suffered from pneumonia due to a recurrent buildup of phlegm in his lungs. Plaintiffs, Gerald and Helen Lilly, are the grandparents and legal guardians of Tadarius.

At the time of his death, Tadarius was a fourth-grade student at Amqui Elementary School, which is part of the Metropolitan Nashville Public School System. Because of his condition, an Individual Educational Program (IEP) was created for Tadarius. The IEP was crafted and agreed to by Tadarius's grandmother, Helen Lilly, the principal at Amqui, Brenda Steele, and Ms. Erick Williams, who was assigned as the one-on-one educational assistant for Tadarius. While IEPs often contain specific medical care instructions, the IEP for Tadarius did not contain any instructions regarding his medical care. Due to the recurrent buildup of phlegm in his lungs, a school nurse, Linda Ballenger, occasionally performed a procedure known as an abdominal thrust or "pushing" to assist Tadarius to clear the phlegm from his lungs. While other school employees, including Ms. Williams, had witnessed the procedure performed, Nurse Ballenger was the only one who performed the abdominal thrust procedure on Tadarius.

The circumstances at issue occurred on April 19, 2005. That morning, while Tadarius was at school, he notified Ms. Williams that he was feeling ill. Ms. Williams took him from the classroom, where he was taking a test, to a life skills classroom so that he could lay down. Ms. Williams placed Tadarius on a changing table on his side and then notified Principal Steele of Tadarius's condition. Ms. Williams attempted to call Ms. Lilly, Tadarius's grandmother; she was not successful. Ms. Williams then returned to assist Tadarius, who remained in the life skills classroom. A little while later, Ms. Williams again left the classroom to inform Principal Steele of Tadarius's current condition, at which time Ms. Williams returned to the classroom accompanied by Principal Steele and another school employee, Tia Tate. When Ms. Williams returned to the classroom with Principal Steel and Ms. Tate, she became "too emotional" and had to leave the room, although she states that Tadarius was not showing signs of distress at that time.[1]

Principal Steele stated that when she arrived in the classroom, Tadarius was laying on his side, was alert, and he spoke to her; nevertheless, she instructed Ms. Tate to call 911. Principal Steele explained later that they called 911 because Tadarius's guardians could not be reached. Ms. Tate was in the room with Tadarius when she called 911, however, she

---

[1]Ms. Williams did not see Tadarius again until after the paramedics arrived.

stated that she never saw Tadarius – this was because she was standing around a corner from where the changing table was located. Ms. Tate admits that she sounded frantic during the 911 call, that she told the paramedics that Tadarius was not breathing, and that the paramedics relayed instructions that CPR needed to be performed on Tadarius. At about the same time, two educational assistants, Jeanne Merriweather and Barbara Denning, who had been overseeing students eating lunch in the cafeteria, came to the life skills classroom after they were notified that people with CPR training were needed.[2]

Ms. Denning stated that when she arrived in the life skills classroom Tadarius was unresponsive, but that he was breathing, though his breathing appeared weak. She also stated she could not recall whether he was on his side or back when she arrived. Ms. Merriweather stated that when she arrived Tadarius was laying on his side and that "they" had to turn him onto his back to perform CPR. Together, Ms. Merriweather and Ms. Denning performed CPR on Tadarius until the paramedics arrived. In the interim, Ms. Williams, who had left the room, called Tadarius's grandmother a second time, this time she was successful and informed Mrs. Lilly that Tadarius was ill and that the paramedics had been called to come to the school.

When the paramedics arrived, they attempted to resuscitate Tadarius and then moved him onto a stretcher and transported him by ambulance to Skyline Medical Center. Ms. Williams accompanied the paramedics in the ambulance; Principal Steele followed in her vehicle. After their arrival at the hospital, Principal Steele and Ms. Williams were informed that Tadarius was dead. When Ms. Lilly arrived at the hospital, she was allowed to view his body at which time Mrs. Lilly noticed vomit on Tadarius's shirt.

On April 17, 2006, Plaintiffs Gerald and Helen Lilly filed suit against the Metropolitan Nashville Public Schools and Principal Steele. They alleged the defendants were negligent in failing to secure proper medical care and in not properly training and not properly supervising school employees. Principal Steele was later dismissed from the suit. On August 2, 2007, Plaintiffs amended their complaint changing the name of the defendant from the school system to the Metropolitan Government of Nashville and Davidson County (hereinafter "Defendant"). On August 31, 2009, Defendant filed a Motion for Summary Judgment contending it had not breached a duty to Tadarius and its actions were not the

_____

[2]In her deposition, as the Defendant contends in its brief, Principal Steele stated that Ms. Merriweather was already in the classroom when she arrived. The Defendant states that this is who Ms. Williams left Tadarius with when she went to inform Principal Steele of his condition. This fact, however, is contradicted by the depositions of both Ms. Merriweather and Ms. Denning. There is some mention of another teacher, Sue Sequin, who may have been present at some point during the events. Her deposition is not in the record.

proximate cause of his death. In support of its motion, Defendant submitted the affidavits of Principal Steele, Nurse Ballenger, Ms. Williams, Ms. Tate, Ms. Merriweather, and two other teaching assistants that were present on the day of decedent's death. Defendant also submitted Plaintiffs' responses to interrogatories. Plaintiffs filed a response opposing the motion along with a response to Defendant's statement of undisputed facts, additional material facts, and the affidavit of Ms. Lilly.

In its Memorandum Order granting summary judgment, the trial court addressed whether the Defendant breached its duty of care to Tadarius by "negligently placing him on his back in violation of a known directive" and "whether [Defendant] failed to secure proper medical care for [Tadarius]." The court found that Defendant did not breach its duty by violating a known directive and that "given the circumstance the performance of CPR was appropriate and that to not perform CPR with [Tadarius] on his back would have been negligent." The court also found that Defendant did not fail to secure proper medical care, and, thus did not breach its duty in this regard. The court also found that Defendant's actions or inactions were not the proximate cause of Tadarius's death because the conduct was not a substantial factor in bringing about his death and because the injury was not foreseeable. Plaintiffs appeal contending summary judgment was inappropriate.

STANDARD OF REVIEW

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008). The appellate court makes a fresh determination that the requirements

of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Martin,* 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, the appellate court first determines whether factual disputes exist. If a factual dispute exists, the court then determines whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

## ANALYSIS

Plaintiffs contend there are genuine issues of material fact which prevented Defendant from negating an essential element of Plaintiffs' claim and from shifting the burden of production to Plaintiffs and, therefore, the trial court erred in granting summary judgment.

The trial court found that Defendant affirmatively negated two essential elements of Plaintiffs' claim: that the Defendant did not breach its duty of care and that the acts or omissions of its employees were not the proximate cause of death. We have determined, as Plaintiffs contend, that there are genuine issues of material fact and, therefore, summary judgment was not appropriate.[3]

---

[3]Defendant contends on appeal that none of Plaintiffs' assertions of fact in their brief should be considered by this court because the brief does not contain citations to the record as our Rule 6(b) requires. Plaintiffs' statement of facts in the brief directly reference the statement of undisputed facts with the identical

(continued...)

At the core of this dispute is Plaintiffs' assertion that Tadarius was not to be placed on his back due to his medical condition and that Defendant is liable for his death because its employees placed Tadarius on his back, which caused his death. On appeal, Plaintiffs contend there are contradictions in the evidence concerning whether Tadarius's condition was sufficiently serious to justify placing him on his back to perform CPR prior to the arrival of the paramedics, and these disputed facts, Plaintiffs further contend, are material because they pertain to Plaintiffs' claim that Defendant was negligent in failing to secure proper medical care, that it did not properly train its employees and agents, and that Defendant did not properly supervise its employees or agents.

As the trial court noted in its memorandum opinion, there is inconsistent, if not conflicting, evidence that Tadarius "either stopped breathing or his breathing became weak." Ms. Denning, one of the teacher's assistants who performed CPR stated that Tadarius was unresponsive but was breathing. Ms. Merriweather stated that Tadarius was not breathing. The evidence demonstrates other inconsistent and conflicting accounts of Tadarius's condition and why the 911 call was made. Principal Steele and Ms. Williams both stated that the decision was made to call 911 because they could not reach Tadarius's guardians by phone, not because he was gravely ill or not breathing; yet, Ms. Tate, who promptly placed the 911 call at Principal Steele's direction, stated that she was "frantic" when she called 911 and told the 911 operator that Tadarius was "not breathing." Considering the evidence in the light most favorable to Plaintiffs, as we are required to do on summary judgment, the evidence also indicates it was Ms. Tate's "frantic" call that led the 911 operator to recommend CPR.

Another disputed fact that appears to be material, which was acknowledged in the trial court's memorandum opinion, is that there is a dispute concerning when Tadarius vomited. If he vomited while being placed on his back, he may have aspirated, which would have impaired his ability to breathe.

Having reviewed the inconsistent and conflicting testimony of witnesses who assisted or attended to Tadarius prior to the paramedics arriving, we have determined a factual dispute exists concerning a material fact, whether it was reasonable or necessary for Defendant's employees to perform CPR – which required that Tadarius be placed on his back – prior to the arrival of the paramedics. This disputed fact directly pertains to the two elements the trial court found Defendant negated; whether Defendant breached a duty of care and, if so,

---

[3](...continued)
numbering of such facts. The argument in their brief also refers to the same facts with numerical citations to the statement of facts section. Accordingly, we find that Plaintiffs' brief sufficiently complies with our rules.

whether this breach of duty contributed to the cause of death. We, therefore, conclude that summary judgment is not appropriate based upon the facts in this record.

Defendant asserts that the school employees acted reasonably under the circumstances, and therefore they complied with the required duty to act as a reasonable person would under the circumstances. *See Roberts v. Robertson Co. Bd. of Education*, 692 S.W.2d 863, 870 (Tenn. Ct. App. 1985). We acknowledge that Defendant may be right on this issue; however, a determination of whether Tadarius did, in fact, need CPR prior to the arrival of the paramedics and whether it was necessary to place him on his back goes to the issue of breach of duty.

We also find that these disputed facts relate to the issue of proximate cause. Generally, proximate cause is a question for the trier of fact "unless the uncontroverted facts and the inferences to be drawn from them make it so clear that all reasonable men must agree on the outcome." *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 281 (Tenn. Ct. App. 1977). The trial court found that Defendant's conduct was not a substantial factor in bringing about his death and that the injury was not foreseeable. However, as with the issue of duty, the question of whether placing Tadarius on his back was appropriate, and whether, as Plaintiffs contend, it was the placement on his back that contributed to his death, requires a resolution of the disputed facts.

Summary judgment is only appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is *no genuine issue as to any material fact*." Tenn. R. Civ. P. 56.04 (emphasis added). Defendant had the burden to demonstrate that no disputes of material fact existed to shift the burden of production to Plaintiffs. *Godfrey*, 90 S.W.3d at 695. We have determined Defendant failed to demonstrate that there are no genuine issues of material fact pertaining to the essential elements of Plaintiffs' claim that are at issue. Therefore, the trial court erred in grant summary judgment.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings. Costs of appeal are assessed against the Appellee.

_____
FRANK G. CLEMENT, JR., JUDGE